HOLTON AND HUCKLEY ads. DEN EX DEM., ELMER WHITE · AND MARY HIS WIFE.

1. A latent ambiguity arising upon the face of a will (as what lands the testator meant to include by the words *my plantation*) may be explained by parol.

2. The court have a right to direct the jury as to what was the intention of the testator, to be gathered from the will and evidence together.

3. When a testator devised to A. "my plantation whereon I now live," and an out-lot detached from it, but held by the same title, was in possession of the widow of his brother, as tenant in dower, such out-lot will not pass by such devise.

4. A devise in a will, "that in case my son Eli dies before the expiration of said lease, then the house and lot, called Oak island, shall descend to my son Andrew," there being no express devise of Oak island to Eli, is a devise to Eli by implication.

---

This case came up on a rule to show cause why the verdict rendered for the plaintiff in ejectment at the circuit should not be set aside, and a new trial granted, upon the following state of the case :

The action is brought for an undivided share of a small tract of land, containing 5.70 acres, with a small house and barn, and known by the name of Oak island, situate in the county of Gloucester. On the trial, the plaintiff exhibited the following title, *viz.* an undisputed title in Israel Hendrickson, in 1793, who died without issue, in 1797, and intestate, leaving a widow. The premises descended to, and became the property of Jonas Hendrickson, subject to dower. Jonas died in June, 1814, leaving six children, three sons and three daughters. Mary, wife of Elmer White, was the youngest, and is

one of the lessors of plaintiff. Upon this evidence the plaintiff rested his case.

The defendants then produced the will of Jonas Hendrickson, dated 24th of May, and proved 22d June, 1814. By this will, the testator devised as follows :

" Touching such things as God has pleased to bless me with, I make and ordain, &c., give and dispose, &c., that is to say : I devise unto my son Eli Hendrickson all the plantation whereon I now live, his heirs and assigns for ever, subject to be leased for thirty-one years after my death, by my executors, for the payment of my debts and legacies." The will then bequeathed to his daughter Rebecca $1200, to be paid to her at the age of eighteen years ; to his daughter Sarah $600, to be paid to her at the age of twenty-one years ; to his son Israel $600, to be paid to him at the age of twenty-one years ; to his son Andrew $600, to be paid to him at twenty-one years ; and to his daughter Mary $600, to be paid to her at twenty-one years of age : all which legacies he directs to be paid out of the rents, issues, and profits arising out of the plantation which he had given to his son Eli.

After a bequest of certain personal property to his wife, the testator says :

" It is my will that if my son Eli should depart this life before the expiration of said lease, then that the within described plantation shall, after the expiration of said lease, descend to my son Israel, and so unto my son Andrew, in case of the death of Israel before the said lease should expire."

The next clause directs the remainder of his real and personal estate to be sold by his executors, towards discharging his debts and legacies. After appointing his executors and a guardian for his children, revoking all other wills, and declaring this as his last will, and adding the attesting clause, he adds the following, *viz :*

" And further, it is my will and desire that in case of the decease of my son Eli before the expiration of said lease, then the house and lot called Oak island, together with its appurtenances, shall descend to my son Andrew and his heirs and assigns for ever."

Having exhibited this will, and it being admitted by the plaintiff that the premises had been conveyed to Huckley, one of the defendants, by Eli Hendrickson, the defendants offered him (after a release) as a witness. He testified that he was thirteen years old at his father's death ; that his father resided on the old plantation, and that one John Rhodes lived on Oak island; that Oak island was separated from the old plantation by a meadow belonging to Samuel Taylor, about three hundred yards in width ; that the testator, in his life, mowed the grass on Oak island, and brought the hay on his plantation ; that he himself took possession of the premises in 1819 or 1820, and before that his guardian had charge of them ; and that all the rest of his father's property was sold by his executors.

Upon this evidence the defendants rested their cause.

The plaintiffs then called the widow of Jonas Hendrickson, who testified that Oak island was no part of the plantation, that the testator never treated it, nor spoke of it as such ; that the widow of Israel, the former owner, married one John Steelman, who rented it to different persons : before her marriage, she rented it a year or so to her husband, the testator. Israel's widow claimed the premises as tenant in dower, and enjoyed it during her life, and survived the testator eight or nine years.

The plaintiff then rested, and upon this evidence the judge charged the jury, that the only question upon the evidence was, whether Oak island was part of the plantation devised by Jonas Hendrickson to his son Eli ; and the evidence on that point seemed clearly against such a conclusion. And that assuming Oak island not to be a part of the plantation, in point of law the plaintiffs were entitled to their verdict, and thereupon the jury rendered a verdict for the plaintiffs.

Argued by *Dayton,* in support of rule, and by *Browning,* against it.

NEVIUS, J.   In support of the rule to show cause why a new trial should not be granted in this case, it is insisted—

1st. That the devise to Eli Hendrickson of all the plantation

*whereon the testator then lived* included *Oak island*, the premises in dispute, and that such is the fair and legal construction of this devise, to be gathered from the whole scope of the will.

2d. That whether Oak island was or was not a part of the plantation devised to Eli Hendrickson and his heirs, was a question of fact, to be settled by evidence *dehors* the will as a latent ambiguity, by the verdict of a jury, and that the court had no legal right to determine it.

And 3d. That admitting the direct devise to Eli did not embrace the premises in question, yet that the last direction in the will carried an estate to Eli, by implication, in the disputed premises.

We will consider these questions in the order presented.

As Oak island is not expressly mentioned by the testator in his devise to Eli of the plantation whereon he lived, it became a question of fact, whether it did or did not constitute a part of the plantation. For this purpose, parol evidence was properly introduced to show what was properly comprehended within the description of the estate devised.    3 *Stark.* 1695. This evidence, I think with the judge who tried the cause, clearly showed that Oak Island was no part of the plantation. It showed that it was not within the boundaries of the plantation, but at some distance from it; that it was not held by the same title; that it was never treated or spoken of by the testator as part of his plantation, and that in truth the testator had neither the possession of, nor the right of possession to it at the time of making his will or at the time of his death, but that it was held by the widow of his brother, as tenant in dower, and continued to be so held for eight or nine years after the testator's death. This evidence, in connection with what appears on the face of the will, to wit, that the devise to Eli was made subject to a lease for twenty-one years from his decease, and the fact that his executors could make no such lease of Oak island, fully justified the judge in saying that this island was no part of the plantation, and thus did not pass by the direct devise to Eli.    The court committed no error

in giving such construction to the will and evidence and in so instructing the jury.

It remains to be inquired whether, by the last clause of the will, Eli took an estate in Oak island by implication. An estate by devise in a will may pass by implication, without express words to direct its course. 2 *Black.* 281 ; 4 *Kent's Com.* 525, 1*st ed.* ; 1 *Peere W.* 472. But where implications are allowed, they must be such as are necessary, or at least highly probable, and not merely possible implications. The familiar case to illustrate the principle is where an estate is devised to the heir after the death of the widow. If nothing else be said of the estate, it has been held that the heir cannot take it until the widow's death, for it is the clear intention of the testator to postpone him until that time ; and as the estate can go no where else, the widow is said to be tenant for life by necessary implication.

Powell, in his treatise on devises, says it is a well known maxim, that an heir can only be disinherited by express devise or necessary implication, so strong that a contrary intention cannot be supposed ; that a devise to testator's heir after the death of *A.* will give A. an estate for life by implication, but if the devise be to a stranger after the *death of A.* there is no such implication. This, he says, is a well settled rule, with numerous cases in support of it. 2 *Pow.* 199.

The general policy of the law and the leaning of courts is against the doctrine of implied estates under devises in wills, and has tended rather to limit than extend it.

In the present case the devise over is to Andrew, one of the six children of the testator, on the contingency of Eli's dying before the expiration of the lease referred to in the former part of the will. It is not a limitation over to the heir-at-law, but to one of the heirs-at-law. If Eli cannot take this property by implication in case he lived beyond the expiration of the lease, the question is, what was to become of it, according to the intention of the testator. He did not mean to die intestate in regard to it, for, in addition to his declaration in the introductory part of the will, that he means to dispose of such things as God has blessed him with, he makes distinct mention of these

very premises. He did not mean that his heirs general should take it, for he gave it in distinct terms to his son Andrew on a certain contingency, which did not happen. And, for the same reason, it is clear to my mind he did not mean that it should be sold by his executors. I cannot resist the conviction that the intention of the testator, as gathered from the whole will, was to devise these premises to Eli, in case he survived the lease, and that he takes an estate in them by necessary implication.

The verdict must therefore, in my opinion, be set aside, and a new trial granted.