16 N.J. Super. 589 (1951)
85 A.2d 296
WILLIAM N. RUSSELL, PLAINTIFF-RESPONDENT,
v.
JAMES R. RUSSELL, INDIVIDUALLY, AND AS EXECUTOR UNDER THE ALLEGED LAST WILL AND TESTAMENT OF JAMES RUSSELL, DECEASED, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1951.
Decided December 17, 1951.
*591 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Carl Kisselman argued the cause for respondent (Mr. Henry S. Ross, attorney).
Mr. Louis B. LeDuc argued the cause for appellant (Mr. Josiah E. DuBois, attorney).
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
James Russell and Alice Meighan Russell, his wife, died ten months apart, each leaving a will executed February 14, 1929, which named the other sole beneficiary and executor and also provided that in the event both should die "at or about the same time," the property should pass in equal shares to their son, the defendant, James Raymond Russell, and their daughter, Alice N.R. Tollefson, "being small recompense for their kindness and devotion to us," and that their third child, plaintiff, William Norman Russell, "who has been a very ungrateful and undutiful son" "shall not receive any part or share of my estate." Neither spouse, however, expressly provided for the contingency of being predeceased by the other. Mrs. Russell predeceased her husband and he took under her will. He died May 11, 1948, and the controversy here is whether he died testate or intestate.
The appeal is by the defendant from a judgment obtained by plaintiff in the Chancery Division upon a finding that, having failed expressly to provide in the will for the contingency which happened, the decedent died intestate so that *592 his estate passes under the intestacy statutes in equal parts to all three surviving children. The argument for reversal is that he died testate as the will, read in its entirety, plainly and clearly shows that Mr. Russell must necessarily have meant that in the contingency which occurred James Raymond and Alice were to take his estate to the exclusion of William Norman, and that, there being no words expressly alluding to that contingency, the court is to cure the defect by implication and thus to mould testator's language so as to carry into effect the intention that he had, on the whole will, sufficiently declared. The words appropriate to the passage of the estate to James Raymond and Alice, and proposed to be implied in the will, are "or my said wife should predecease me," as follows:
"SECOND: All the rest, residue and remainder of my estate, of whatsoever the same may consist, and wheresoever situate, whether real, personal or mixed, I give, devise and bequeath unto my beloved wife, Alice Meighan Russell, absolutely, her heirs and assigns. In the event that my said wife, Alice Meighan Russell, and I should died (sic) at or about the same time, or my said wife should predecease me, then I give, devise and bequeath the said rest, residue and remainder of my estate unto my son, James Raymond Russell, and unto my daughter, Alice Neville Russell Tollefson, in equal shares, their heirs and assigns, said bequests being small recompense for their kindness and devotion to us. I have made no mention nor made any bequest unto my son, William Norman Russell, who has been a very ungrateful and undutiful son, it being my desire that he shall not receive any part or share of my estate.
LASTLY, I nominate, constitute and appoint my said wife, Alice Meighan Russell, to be the Executrix of this, my last will and testament. In the event that my said wife and I should die at or about the same time, or my said wife should predecease me, then I nominate, constitute and appoint my said son, James Raymond Russell, to be the Executor of this, my last will and testament * * *."
The law will supply words by implication where the words actually employed "most literally taken would not express, or would not sufficiently express, the plain meaning of the writer; and where, in order to bring out that meaning, something must be understood beyond or even different from what is set down." Losh v. Townley, Coop. t. Brough, 372, *593 47 Eng. Rep. 133 (Ch. 1834). But gifts by implication are not favored in the law. 2 Page on Wills (1941), p. 861; White v. Holton, 23 N.J.L. 330, 425 (Sup. Ct. 1852); Reynolds v. Reynolds, 16 N.J. Misc. 1 (Cir. Ct. 1937). Standing alone, the presumption against intestacy does not suffice to justify the implication, Glover v. Reynolds, 135 N.J. Eq. 113 (Ch. 1944), affirmed 136 N.J. Eq. 116 (E. & A. 1945); a court may not give effect to a supposed intention of a testator which finds no expression in a will; but a court may give effect to an intention or purpose, indicated by implication, where the express language of the entire will manifests such an intention or purpose. Daly v. Rogers, 132 N.J. Eq. 200 (Ch. 1942).
Lord Eldon's pronouncement 140 years ago, in Wilkinson v. Adam, 1 V. & B. 422, at 466, 35 Eng. Rep. 163, at 180 (Ch. 1812), following Lord Hardwick's holding 67 years earlier in Coryton v. Helyar, 2 Cox 340, 30 Eng. Rep. 156 (Ch. 1745), phrased the pertinent canon of construction in language which has been repeated in substantially the same words in our own courts down to this day. See cases collected in Daly v. Rogers, supra, p. 205; Clapp, Wills & Administration, sec. 228, p. 535, and sec. 108, p. 255. Lord Eldon said:
"With regard to that Expression `necessary Implication,' * * * in construing a Will Conjecture must not be taken for Implication: but necessary Implication means, not natural Necessity, but so strong a Probability of Intention, that an Intention contrary to that, which is imputed to the Testator, cannot be supposed."
Wilkinson v. Adam was followed and applied by an English court at least as recently as 1947, in Veasey v. Smith [1948], 1 Ch. 49, 53 (1947), where 1 Jarman on Wills (7th ed.), p. 556, is also cited, which text expresses the matter thus:
"Where it is clear on the face of a will that the testator has not accurately or completely expressed his meaning by the words he has used, and it is also clear what are the words which he has omitted, those words may be supplied in order to effectuate the intention, as collected from the context."
*594 And also pertinent here is the comment that
"* * * If * * * the property * * * claimed to be bequeathed or devised by implication, in a contingency which has occurred, has been made the subject of an express bequest or devise in another contingency, which did not occur, then effect may be given to such bequest or devise by implication, in the contingency which did occur, if a reading of the entire will makes manifest that such was the intention of the testator. When courts have refused to sustain a bequest or devise by implication, the will * * * did not direct in any specified contingency any disposition of it, and thus it did not furnish a basis in language of the testator from which to imply such an intent." In re Selner's Estate, 261 App Div. 618, 26 N.Y.S.2d 783 (App. Div. 1941), affirmed, per curiam, 287 N.Y. 664, 39 N.E.2d 287 (Ct. Apps. N.Y., 1941).
Does Mr. Russell's will evince a meaning that in the contingency which has occurred his estate is to be divided equally between James Raymond and Alice to the exclusion of William Norman? We cannot read his will and its provisions sharply differentiating between James Raymond and Alice on the one hand and William Norman on the other, remembering that Mrs. Russell made identical provisions in her will, and escape reaching the conviction that it was Mr. Russell's positive intent that, as well in the contingency which happened as in the event he and his wife died at or about the same time, his estate should pass only to James Raymond and Alice and that William Norman should have none of it. This meaning plainly may be gathered from the contrast between the sense of appreciation and obligation expressed toward James Raymond and Alice, "being in small recompense for their kindness and devotion to us," and the parental determination to cut-off William Norman explicit in the reference to that child as one "who has been a very ungrateful and undutiful son" and "shall not receive any part of my estate."
A reading of this will clearly reveals that Mr. Russell's primary concern was that Mrs. Russell should take all his property if she survived him, as it was her chief concern that he take her property if he survived her. However, a secondary *595 purpose is disclosed by each will, with equal clarity  in Mr. Russell's will, specifically, to give his property, if his wife did not survive him, to James Raymond and Alice to the exclusion of William Norman. This is shown in the quoted words, the same as those used by Mrs. Russell, giving his reasons why he did not wish William Norman to have any part of his estate and did wish to reward James Raymond and Alice for their filial consideration toward himself and his wife. That expressed intention is frustrated by the construction made below that he died intestate under the contingency which ensued and admitting William Norman to a one-third interest in the estate.
We find here such a strong probability that the testator intended the disposition made in the event of the possible contingency actually provided for in the will to apply also in the probable contingency which actually occurred, but which was not specifically provided for in the will, that we conclude a contrary intention cannot be supposed.
Our conclusion does not make a new will for Mr. Russell. It is merely giving effect to testamentary intention limited to language within the four corners of the will. It is a sustaining of a bequest by implication in exact accord with the expressed bequest in the will, thus giving effect to the expressed general testamentary plan and purpose of the testator.
"Laymen would have no difficulty in sustaining a bequest by implication from the language in which the decedent expressed his testamentary intent. Courts should not, by self-imposed impotence, not required by the precedents, be less efficacious. They should give effect to plainly discernible, though ineptly expressed, testamentary intent." In re Selner's Estate, supra, 788.
The New York courts, while following the rule announced by Lord Eldon, Post v. Hover, 33 N.Y. 593, 599 (Ct. of Apps. 1865), have gone much further. They have not hesitated to imply words necessary to cover such a contingency as occurred here even when upon the face of a will the testator's meaning is more obscure than is the case here. Cf. In re Hardie's *596 Estate, 176 Misc., N.Y., 21, 26 N.Y.S.2d 333 (Sur. Ct. 1941), affirmed without opinion 263 App. Div. 927, 33 N.Y.S.2d 389 (App. Div. 1942), leave to appeal denied 288 N.Y. 738, 41 N.E.2d 793 (Ct. Apps. 1942); In re Bien's Will, 181 Misc., N.Y., 352, 41 N.Y.S.2d 138 (Sur. Ct. 1943); and see In re Rentall's Will, 60 N.Y.S.2d 646 (Sur. Ct. 1945). In the Hardie case this was done to permit charities to take a residuary estate where the wife predeceased the husband by fourteen months and the will covered only the contingencies of her survival and their simultaneous deaths. In that case evidence of the testator's relations with his next of kin was admitted to support the construction of his will that he meant the charities to take in any contingency except his wife's survival. In the Bien case the words were implied so that a cousin and a niece might take a residuary estate where the husband predeceased the testatrix wife by eleven years and the will likewise provided only for the contingencies of his survival and their deaths in a common disaster. There the significant fact justifying the implication was deemed to be the failure of the will to mention another niece who upon intestacy would take to the exclusion of the cousin. But see Glover v. Reynolds, supra.
We conclude that this is a case for judicial implication to fulfill the testamentary plan clearly and indubitably revealed upon the face of the will, and it being also clear what are the words which the testator has omitted, those words, to wit, "or my said wife should predecease me," will be implied. See Ricardo v. Kelly, 134 N.J.L. 540 (Sup. Ct. 1946). Equally apt to this will, as it was to the will there construed, is the observation of Lord Justice James in In re Ridge's Trusts, L.R. 7 Ch. App. 665, 668 (1872):
"This will lends itself to that more readily than most wills in which implication has been introduced, for the Court is not striking out a single word; it is not contradicting anything in the will, but it is giving to every sentence its plain, grammatical, and ordinary meaning. If any of the events provided for happen, then the will takes effect according to its letter. The implication only applies to *597 events for which the testator has not in terms provided, but as to which no person applying merely common sense to the will can have any doubt what he intended."
And see City Bank Farmers Trust Co. v. Hentz, 107 N.J. Eq. 283 (Ch. 1930); White v. Holton, supra.
Glover v. Reynolds, supra, is not to the contrary. There is similarity between that case and this in the contingency provided for, but the similarity ends there.
The judgment is reversed and the case is returned to the Chancery Division with direction to enter judgment dismissing the complaint.