44 N.J. Super. 408 (1957)
130 A.2d 858
MONTCLAIR TRUST COMPANY, PLAINTIFF,
v.
ELVA M. LUPHER, DOROTHY JONES, JOHN W. DUTTON, CHESTER S. DUTTON, DEFENDANTS-APPELLANTS, AND LOUISA-JANE FLYNN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 1957.
Decided April 8, 1957.
*409 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Charles A. Cohen argued the cause for defendants-appellants.
Mr. Frank S. Sauer argued the cause for defendant-respondent (Mr. George B. Welle, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff, administrator c.t. a of the estate of Theodore J. Badgley, instituted this action for a judicial construction of his will and for instructions. Those brought in as defendants were the four nephews and nieces of decedent's wife Emma (hereinafter designated "appellants"), who were to take the residuary estate in a certain contingency, and decedent's niece, who was Badgley's only heir at law and next of kin (hereinafter designated "respondent"). The Chancery Division concluded that the contingency had not come to pass, decedent *410 died intestate, and respondent was entitled to the residuary. The wife's kin appeal.
Decedent was a member of the New Jersey Bar. On January 7, 1941 he and his wife executed similar wills, each giving his (her) entire estate to the other and nominating the other executrix (executor). Both wills then provided as follows:
"This Will is made expressly subject to this contingency: in case I and my said wife shall die or meet death as the result of a common disaster, I give, devise and bequeath all my estate, both real and personal, of whatsoever kind and nature, as follows: I give, devise and bequeath the net income accruing from one half share or portion of my estate to my brother OLIVER K. BADGLEY for and during the term of his natural life, and upon the death of said Oliver K. Badgley, I give, devise and bequeath said one half share or portion of my estate to the nephews and nieces of my wife, Emma E. Badgley, that is to say: to ELVA M. LUPHER, DOROTHY JONES, JOHN W. DUTTON and CHESTER S. DUTTON, to be equally divided among them share and share alike, their heirs and assigns forever; and I give, devise and bequeath the remaining one half portion of my estate to the nephews and nieces of my wife Emma E. Badgley, viz: ELVA M. LUPHER, DOROTHY JONES, JOHN W. DUTTON and CHESTER S. DUTTON, to be equally divided among them share and share alike, to them, their heirs and assigns forever.
In case of the happening of the above contingency, whereby my death and the death of my wife shall occur as a common disaster, I nominate, constitute and appoint the MONTCLAIR TRUST COMPANY, of MONTCLAIR, NEW JERSEY, Executor of this my Last Will and Testament, with full power and authority to grant, bargain, sell and convey and lease and mortgage any or all of my real estate or any interest therein, and to execute and deliver good and sufficient instruments for that purpose, and I direct that no bond or security shall be required of said Montclair Trust Company, Montclair, New Jersey, as Executor of this my Last Will and Testament, in case it shall act as Executor of this my Last Will and Testament on the happening of the above contingency."
Badgley's brother Oliver died a number of years prior to decedent, so that the life estate appointed for him never came into being and is not here involved. Oliver had been divorced by his wife in 1918; respondent is his only child.
The Badgley's never had any children. Decedent died January 10, 1956. His wife had predeceased him by a *411 little more than a month, from causes admittedly in no way connected with that which brought on his death. Accordingly, the "common disaster" clause of the mutual wills never came into play.
Appellants first project two fundamentals of will construction with which there can be no disagreement: (1) the ultimate aim of all construction is to determine the true intention of the testator, and this is to be drawn, not from any single clause of the will, but from a consideration of all the language found within its four corners. Resort may be had to extrinsic evidence touching the circumstances surrounding or attending the will, so as to place the court in the situation of the testator at the time of its execution. (2) The law abhors intestacy and presumes against it. From this background appellants go on to argue that the will contains adequate language upon which to predicate and sustain the gifts to them; and, alternatively and additionally, that "from the whole of the will and the attendant circumstances a plain intention appears, and must be given effect, that the named beneficiary shall take in the event, as actually happened, that the wife predeceased the testator."
Appellants insist that two distinct ideas are evident in the language of the contingency clause, "in case I and my said wife shall die or meet death as the result of a common disaster." "Die" and "meet death," they say, are not congruent expressions. The first imports disease or debility, and the second some external and dramatic cause, instantly or ultimately fatal. Appellants reason that the expression "shall die" is an independent thought, and that the words "meet death" are modified by the phrase "as the result of a common disaster" to which they stand in juxtaposition. Appellants make their position entirely clear when they suggest the interpolation of a comma and three words in the contingency clause, so that it would read: "in case I and my wife shall die[,] or [in case we] meet death as the result of a common disaster."
*412 There is little reason for drawing the suggested distinction which appellants urge upon us. Whatever differences might exist between "die" and "meet death" in another context, we agree with the trial judge that in this case they both denote one idea and one event. That this is so is made clear by several considerations. In the first place, the contingency clause is introduced by the words "This Will is made expressly subject to this contingency"  the noun is singular. If any force whatever remains in appellants' contention that "this contingency" is not necessarily to be limited to a single contemplated contingency, the testator made his intention clear beyond peradventure when, in the beginning of the very next paragraph, he said that "In case of the happening of the above contingency, whereby my death and the death of my wife shall occur as a common disaster," Montclair Trust Company was to act as executor. And at the close of that paragraph the language again is "on the happening of the above contingency."
It only remains to be determined whether the will as written actually fails to provide for the contingency of testator's surviving his wife, or whether such provision can be found by implication. The case of Glover v. Reynolds, 135 N.J. Eq. 113 (Ch. 1944), affirmed o.b. 136 N.J. Eq. 116 (E. & A. 1945), is dispositive. The husband and wife in that case had made mutual wills, each leaving the entire estate to the other. The wife's will provided:
"In the event that my husband and myself die simultaneously regardless of the order of passing, I give and bequeath my property both real and personal, wherever situated, as follows: * * *."
The husband predeceased his wife. The same arguments were advanced in Glover as here. In holding that the wife died intestate, the court said:
"It is argued in the briefs that the intention of the decedent `can be spelt out, and it logically appears to be: "In the event that my husband die," or in other words "if my husband does not survive me, I give and bequeath,"' etc. This argument is based on the premise that the testatrix did not intend to die intestate. *413 The rule of presumption against intestacy, however, cannot be used to justify a revision of the clear language of the will. Federal Trust Co. v. Ost, 120 N.J. Eq. 43; affirmed 121 N.J. Eq. 608.
By her will, the testatrix appears to have had in mind only two possible situations; to wit, that she would predecease her husband or that they would die simultaneously, or, at least contemporaneously. She completely overlooked the contingency which did occur. Her failure to anticipate this, or, in the alternative, to execute a new will in the four months which intervened between the death of her husband and her death, cannot now be cured. This court, under the guise of construing the will, will not write a new one. As has frequently been pointed out in our decisions, it may be that if she could now express her views she would wish her estate to pass to the defendant beneficiaries, but this is of no moment here. * * *" 135 N.J. Eq., at page 115.
Appellants rely heavily upon Russell v. Russell, 16 N.J. Super. 589 (App. Div. 1951), and seek to distinguish it from the Glover case. The court in Russell recognized the Glover decision as authoritative. It noted that although there was a similarity between the two cases in the contingency provided for, "the similarity ends there." In Russell, as here, there were mutual wills, each spouse naming the other as sole beneficiary and executor. The wills provided that in the event both should die, "at or about the same time," the property should pass in equal shares to their son James and daughter Alice, "being small recompense for their kindness and devotion to us," and that their third child, William, "who has been a very ungrateful and undutiful son, * * * shall not receive any part or share of my estate." Neither spouse, however, expressly provided for the contingency of being predeceased by the other. Mrs. Russell died before her husband; upon the latter's death William claimed that his father had died intestate, so that James, Alice and he were entitled to equal one-third shares of the estate. The court held that it could not read the will and its provisions sharply differentiating between James and Alice on the one hand and William on the other, and escape reaching the conviction that it was Mr. Russell's positive intent that, as well in the contingency of his wife's predeceasing him as in the event that he and she died at or about the same time, his estate should pass only to James *414 and Alice, and William have none of it. In short, the court gave effect to what it considered the obvious testamentary intent and, by implication, supplied the words "or my said wife should predecease me" as part of the contingency clause. To like effect, see Balcom v. Balcom, 333 Mass. 599, 132 N.E.2d 305 (Sup. Jud. Ct. 1956), and Wing v. Rogers, 149 Me. 340, 107 A.2d 708 (Sup. Jud. Ct. 1953).
The court in Russell referred to Wilkinson v. Adam, 1 V. & B. 422, 466, 35 Eng. Repr. 163, 180 (Ch. 1812), where Lord Eldon, almost a century and a half ago, gave definitive expression to a canon of construction on which courts still rely:
"With regard to that Expression `necessary Implication,' * * * in construing a Will Conjecture must not be taken for Implication: but necessary Implication means, not natural Necessity, but so strong a Probability of Intention, that an Intention contrary to that, which is imputed to the Testator, cannot be supposed."
And see 5 N.J. Practice (Clapp, Wills and Administration), § 228, p. 535 and § 108, p. 255. In Daly v. Rogers, 132 N.J. Eq. 200, 205 (Ch. 1942), it was said:
"Devises by implication are not favored. There must be something more than conjecture to warrant the implication. The will itself must furnish the basis of the construction. To justify a gift by implication, the gift must rest on a probability of an intention so strong that an intention contrary to that which is thus imputed to the testator cannot be supposed to have existed in his mind. Where implications are permissible, they must be such as are at least highly probable and not merely possible implications. [citing cases]"
Judge Clapp, in his concurring opinion in In re Klein's Estate, 36 N.J. Super. 407, 416 (App. Div. 1955), carefully reviewed the doctrine of implications and noted that two conditions must exist before an implication will be made:
"In the first place, where there has been an oversight on the testator's part, not with respect to the matter of expression, but with respect to ideas, the court can be of no aid. We may furnish *415 words, but never intentions. The first of the two conditions then is this: an implication will not be made unless a reading of the will produces on the mind of the court a conviction that the testator at the time of the will actually and in truth had an intention to make a provision not found there. [citing cases]
The second condition is this. We must be convinced from the will not only that it contains but a fragment of the testator's actual intentions, but also that we can see, in the fragment given us, the contour of that which is not stated. [citing cases] The implication depends upon the apparency of the entire image, to some degree, from an observation of the portion that is visible. * * *" 36 N.J. Super., at pages 416-417.
The language of the will in the Russell case met the test set out in Daly v. Rogers and In re Klein. Not so the will we here examine. It is possible that the testator intended his wife's nieces and nephews to take under his will, to the exclusion of his own niece, even if the wife should predecease him. But the merely possible is not a substitute for the highly probable  probable to the point of inescapable conviction  and we therefore are not at liberty to draw the implication which appellants urge. There is no room for misapprehending the meaning of the language which testator used, and if acceptance of that meaning leads to intestacy, we are precluded, under the Glover case, from preventing that result merely because the court may suppose that the testator overlooked the contingency that his wife might predecease him. Cf. McDonald v. Clermont, 107 N.J. Eq. 585, 588 (E. & A. 1931).
The fact is that the testator, a lawyer, simply did not think of that contingency, and therefore made no express provision for it. As was said in Lawes v. Lynch, 6 N.J. 1, 8 (1950), it is not our function to make a will for the testator, but to construe the one which he made, "and if the legal effect of his expressed intent is intestacy it will be presumed that he designed that intent since he is presumed to know the law."
Affirmed.