46 N.J. Super. 369 (1957)
134 A.2d 810
IN THE MATTER OF THE ESTATE OF ALFRED SCHMIDT, DECEASED.
EILEEN SCHMIDT, APPELLANT,
v.
HUDSON TRUST CO. AND EILEEN SCHMIDT, AS EXECUTORS, ETC., ALFRED SCHMIDT, JR., JOY CAMPBELL AND JOANNE ALFREDA SCHMIDT METZLER, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 4, 1957.
Decided September 23, 1957.
*371 Before Judges GOLDMANN, FREUND and CONFORD.
*372 Mr. Joseph M. Lynch argued the cause for appellant (Mr. J. Seymour Montgomery, attorney; Mr. Gordon D. Griffin and Mr. Lynch, of counsel).
Mr. Milford Salny argued the cause for respondent Joanne Alfreda Schmidt Metzler (Mr. Alan Rubenstein, on the brief).
Mr. Leon M. Rosen, respondent guardian ad litem for Alfred Schmidt, Jr. and Joy Campbell, infants, argued the cause pro se (Mr. Nathan Blumberg, of counsel).
Mr. George P. Moser argued the cause for respondents Hudson Trust Company and Eileen Schmidt, executors (Mr. Leo I. McGough, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Eileen Schmidt, widow of Alfred Schmidt and one of the two executors under his last will, appeals in her individual capacity from a judgment of the Hudson County Court, Probate Division, determining that decedent died intestate as to $24,000 in cash found in his safe deposit box after his death, and ordering the executors to administer that fund as intestate property.
Alfred Schmidt died March 15, 1954. His will, dated December 18, 1953, was admitted to probate and letters testamentary issued to Hudson Trust Company and the widow, who were named executors and trustees under the will. Among decedent's assets the executors found $24,000 in currency in a safe deposit box at Hudson Trust Company. Other assets were deposits in bank accounts, tangible personality, stocks and bonds, choses in action and realty. Estate assets totalled $180,447, exclusive of realty.
Paragraph First of the will directed the executors to pay all just debts and funeral expenses, "first, from the cash that I might have in any bank account or bank accounts and if the cash is insufficient, then from such stocks and bonds of which I might die seized, using only as a last resort the real estate and stock in the Weehawken Engineering *373 Company of which I might die seized." By paragraph Second testator bequeathed to his wife "the remainder of any cash in any bank account or bank accounts" remaining after payment of debts, funeral expenses and administration expenses, together with all of his "personal effects, to wit, household furnishings, jewelry, clothing and any automobile or automobiles," and his stock in the Weehawken Engineering Company. Paragraph Third devised all the real estate to the widow.
By paragraph Fourth decedent left all his stocks and bonds remaining after payment of debts, funeral expenses and administration expenses, in trust, the income therefrom to be paid to the wife for her support and the support and maintenance of decedent's son Alfred, Jr., until he reached the age of 25, at which time the trustees were to deliver half the trust corpus to the son in kind. They were to continue holding the remaining one-half, the income to go to the wife for life or until the son became 30 years old, whichever event happened last, at which time the trustees were to deliver the balance of the trust corpus to the son. The will provided that if the wife predeceased testator or died at any time before Alfred, Jr., became 30 years old, the trustees were to pay the income to the son for the periods referred to. If the son died subsequent to testator and before the trust corpus was turned over to him, then the corpus was to be given to the wife, if living. In the event of the son having died before distribution of the corpus, and the wife having predeceased the son, then the corpus was to go to testator's stepdaughter, Joy Campbell.
Paragraph Sixth empowered the trustees, after distribution of half the trust corpus to the son at age 25, to invade the corpus to pay any unusual hospital or medical bills of the wife and to supplement her trust income and income from other sources, if the same appeared to be insufficient, to permit her to live "in the station of life we are now living in."
The will contained no residuary clause.
On November 4, 1955 the executors filed a complaint in two counts in the Hudson County Court, Probate Division. *374 The first count sought allowance of their first intermediate account, and named the widow, the son Alfred, and testator's stepdaughter Joy Campbell, as all persons interested in the account. The second count recited the discovery of the $24,000 in cash and that the widow claimed this money as part of the cash bequeathed to her under paragraph Second of the will. Plaintiffs alleged they were uncertain as to whom to distribute the $24,000 and demanded judgment under the second count directing distribution of the estate in their hands.
Notice that the account would be reported for settlement and application made for directions as to the distribution of the estate in accordance with the terms of the will, was given to the three named beneficiaries. Thereafter, on December 20, 1955, the County Court entered judgment allowing the account and reciting that there remained in the accountants' hands a balance of $131,181.70 (subject to fees) to be disposed of according to law. Disposition of the second count of the complaint seeking instructions as to distribution was to await the further order of the court.
The County Court had in the meantime appointed Leon M. Rosen, Esq., as guardian ad litem for the infants, Alfred, Jr., and Joy Campbell, then respectively 3 and 15 years of age. He reported that in the light of his examination of the law, as set forth in a memorandum attached to the report, it was his opinion that testator had died intestate as to the $24,000 found in the safe deposit box and that this money should be distributed in accordance with N.J.S. 3A:4-2 (descent and distribution of intestate real and personal property.)
After considering the guardian's report, briefs of counsel and oral argument, the County Court judge filed an opinion on January 5, 1956 in which he concluded that testator had failed to dispose of the cash in question and it therefore would be distributed in accordance with the statute.
Thereafter, respondent Joanne Alfreda Schmidt Metzler, decedent's granddaughter, not named in the complaint as a party in interest or having received prior notice of the *375 proceedings, petitioned for leave to intervene as a person entitled to share in any of decedent's property passing by intestacy. (Joanne was the only child of decedent's son by a former marriage; he was the only child of that marriage and died in 1942.) Leave to intervene was granted with the consent of all parties.
Counsel for the executors then moved for reargument on the substantive question of whether decedent had died intestate as to the $24,000. They raised no jurisdictional or procedural issues, nor had they at the time of the earlier determination. The motion was denied and judgment entered November 9, 1956 determining that decedent died intestate as to this money, and directing the executors to administer the $24,000 as if decedent had died intestate. It is from this judgment that Eileen Schmidt, the widow, appeals in her individual right.
It appears that on motion and cross-motion in earlier proceedings in this court, brought to determine whether the County Court judgment on the second count of the complaint was interlocutory or final, this court ruled that the judgment was final and nothing more remained to be done than to distribute the money.
In addition to the point involving the construction of the will, appellant here raises three points not argued below: (1) the County Court judgment is invalid because the interests of the two infant beneficiaries were adverse and separate guardians ad litem should have been appointed for them; (2) the judgment is invalid because there is no proof in the record that all interested parties were before the County Court; and (3) the County Court lacked jurisdiction to construe the will on the intermediate accounting.
Ordinarily this court will not pass upon matters not presented or considered below. However, the primary emphasis of our present judicial system is upon facilitating the granting of justice and bringing about an impartial and expeditious determination of the essential merits of the issues. Devlin v. Surgent, 18 N.J. 148, 153 (1955). Our *376 rules are directed toward that end. They contemplate just disposition of a cause on the merits wherever possible, and the avoidance of determinations on the basis of procedural niceties. Handelman v. Handelman, 17 N.J. 1, 10-11 (1954). This is made clear beyond peradventure in R.R. 1:27A, which specifically provides that the rules may be relaxed or dispensed with in any instance where it is manifest that strict adherence to them will work surprise or injustice. We therefore proceed to dispose of the three points which appellant now raises for the first time.
Under paragraph Fourth of the will the infant Joy Campbell has a contingent interest in the trust estate of stocks and bonds. Appellant argues that if the $24,000 found in the safe deposit box is not included under "cash in any bank account or bank accounts," then it would not have to be used to pay any of the debts, funeral expenses and administration expenses. To declare the money intestate property would result in the trust estate being called upon to bear part of the debts and expenses, thus adversely affecting Joy's contingent interest. (It would appear that cash on deposit in decedent's bank accounts totalled about $32,000, and debts, expenses and taxes totalled some $54,475. There will undoubtedly be additional counsel fees and legal expenses. Thus, if the $24,000 is not considered as having passed under the will, the assets of the trust estate will be depleted by at least $22,475.) Of course, if the $24,000 passes by intestacy, then Joy as stepdaughter gets nothing, while Alfred, Jr., receives his intestate share.
The contention here is that since the court appointed only one guardian ad litem for both Joy and Alfred, Jr., the position the guardian took favoring a construction that would pass the $24,000 as intestate property was contrary to Joy's best interests, and this was error because her interests were not represented at all. R.R. 4:30-2 requires that an infant be represented in an action by his guardian ad litem, appointed by the court. The rule does not circumscribe the choice of that officer of the court; who he shall be is left to the sound discretion of the judge.
*377 It would have been better practice to have a separate guardian ad litem appointed for each of the infants. However, we fail to see how Joy's interests were actually prejudiced. Her position that the $24,000 passed under the will was fully represented in the lower court by the present appellant, her mother and natural guardian. Indeed, it is still maintained on this appeal. All the arguments that could have been presented on behalf of both infants, were before the County Court and are now before us. Nor are there any facts which indicate that the guardian ad litem used his position to the injury of the infant Joy. Absent a showing of prejudicial error, or of any factual basis for determining that the guardian ad litem used his position adversely, there is no ground for reversal. Cf. Brown v. Fidelity Union Trust Co., 135 N.J. Eq. 404 (Ch. 1944); Garza v. Paone, 44 N.J. Super. 553, 560 (App. Div. 1957); and see 27 Am. Jur., Infants, § 123, p. 844 (1940).
We are urged to declare the judgment under appeal invalid because the record fails to show that all interested parties were before the County Court. The second count of the complaint names Eileen Schmidt and the two infants, Alfred, Jr., and Joy, as the "persons interested in this action." Appellant raises the objection that the complaint failed to state clearly that these were the only persons entitled to share in decedent's intestate property, citing R.R. 4:108-1 and 2. But see R.R. 4:106, dealing with the practice on settlement of an account. All persons who might possibly share should, it is claimed, have been named, or at least adequate notice given them. It is not inappropriate to observe that it was appellant herself who, as one of the executors, joined in the complaint which purported to set out the names of all persons interested in the action. She undoubtedly provided this information, so that her present objection sinks to the level of an exercise in technicality. However, to satisfy ourselves we invited all counsel at the oral argument to state if they knew of anyone, in addition to the three named persons, who might possibly share in the intestate property. They knew of no one. Accordingly, *378 everyone who might in any way be interested in the issues was before the County Court when it rendered its judgment on the second count, and is now before this court  the three named beneficiaries and decedent's granddaughter Joanne, by reason of her intervention.
It should be pointed out that in any event, assuming there is some person now unknown who might eventually share, no prejudice has resulted. The determination of the County Court was favorable to the result that would have been urged by any absent interested party, namely, intestacy as to the $24,000. Moreover, there has been no distribution as yet of any portion of that money. Our disposition of the appeal will not change the eventual result. Upon further proceedings below, the County Court can make sure that all interested parties (should there be any other than the four indicated) receive adequate notice to appear.
Plaintiff contends that the County Court lacked jurisdiction to construe the will on the intermediate accounting. The argument is ably and provocatively presented. However, we deem it unnecessary to analyze the argument and pass upon the point raised. Assuming we were to agree with appellant, this could only result in the cause being remanded to the Chancery Division for construction of the will, or to the County Court to await the final account of the executors and an action for distribution. The latter procedure, as pointed out by the executors, would be quite unsatisfactory, for they cannot prepare their final account until the federal estate tax and the New Jersey inheritance tax proceedings can be completed. The assessment of the federal estate tax due cannot be made until the amount of the marital deductions has been determined, and that determination depends in turn upon a resolution of the question before this court, i.e., whether the $24,000 passed to the wife under the will or whether she is to receive only that share to which a widow is entitled under the statute of distribution, N.J.S. 3A:4-2. The New Jersey inheritance tax proceedings cannot be completed and the tax determined until the amount of the federal estate tax has been ascertained. The executors would *379 be faced with a dilemma were the matter remanded to the County Court.
Remanding the case to the Chancery Division to construe the will would be equally unsatisfactory. All interested parties are before us. Prompt resolution of the core issue presented to us is not only desirable but, in fact, necessary to the proper administration of testator's estate. The executors cannot discharge their duties, terminate the tax proceedings and render their final account until the question of the disposition of the $24,000 has been resolved.
Art. VI, Sec. V, par. 3 of the 1947 Constitution confers upon the Supreme Court and the Appellate Division "such original jurisdiction as may be necessary to the complete determination of any cause on review." This authority has been implemented by R.R. 1:5-4(a), made applicable to this court by R.R. 2:5. We elect to exercise our original jurisdiction and construe the will. This makes unnecessary any further consideration of the question whether the County Court lacked jurisdiction to construe the will on the intermediate accounting. By exercising original jurisdiction we can settle the difficult issues now facing the executors in the administration of the estate, avoid the possibility of a remand, and effectuate a complete determination of the cause on review.
This brings us to the main issue: Did the $24,000 in the bank safe deposit box pass to the wife under the second paragraph of the will, or should it eventually be distributed pursuant to N.J.S. 3A:4-2 as intestate property?
Appellant contends that a reading of the will as a whole reveals decedent's testamentary scheme, and that the County Court's holding of partial intestacy is totally inconsistent with that scheme. The testator, says appellant, had in mind a five-fold plan: (1) he was concerned with the future welfare of only two persons  his wife primarily and his son secondarily; (2) he wished to dispose of his entire estate to these two and carefully tried to avoid intestacy; (3) he desired to withhold any lump sums of money from his son's possession  such as the share of the $24,000 which would *380 go to him under the County Court's determination of intestacy  and to restrict him to income payments until age 25; (4) he wanted his wife to live in the same station of life they enjoyed at the time the will was executed; and (5) he desired his assets to be used, in the order of their liquidity, for the payment of his debts and the expenses of the estate. We are reminded that the law abhors intestacy; that a testator is always presumed to have intended to dispose of his entire estate. Appellant claims that the phrase "the remainder of any cash in any bank account or bank accounts," found in paragraph Second of the will, is an ambiguous one, and urges that in matters of will construction the current judicial approach is to consider not words in and of themselves, but as instruments for the forwarding of a testamentary plan. Not the word, but the intent manifested by the testator in his will, must prevail.
We find no ambiguity in the will. The first paragraph instructs the executors "to pay my just debts and funeral expenses * * * from cash that I might have in any bank account or bank accounts and if the cash is insufficient, then from stocks and bonds of which I might die seized, using only as a last resort the real estate and stock in the Weehawken Engineering Company of which I might die seized." Here the word "cash" is specifically limited by the words "in any bank account or bank accounts." To further emphasize that decedent intended only cash in bank accounts to be encompassed by his will, in paragraph Second he bequeathed "the remainder of any cash in any bank account or bank accounts after the payment of my debts, funeral expenses and administration expenses as provided for in paragraph One, * * *" to his wife, together with other specific bequests.
In effect, appellant argues that the phrase "cash in any bank account or bank accounts" should be construed and stretched to include cash in a personal safe deposit box to which the bank has no right of access. N.J.S.A. 17:9A-215 et seq. indicate that the word "account" refers to deposits. N.J.S.A. 17:9A-25 differentiates between accounts and *381 safe deposit boxes. Obviously, a bank account creates a creditor-debtor relationship, while a safe deposit box creates a bailor-bailee relationship.
Our main concern is not so much with what the testator meant to say as it is to determine what he meant by what he did say. We cannot distort or enlarge words to effectuate a wholly unexpressed intention. It is not our function to make a will for the testator, but to construe the one he made. Cf. Montclair Trust Co. v. Lupher, 44 N.J. Super. 408 (App. Div. 1957). We cannot speculate as to what the testator would have done had he foreseen he would die with cash in his safe deposit box. (The same might be said had decedent died with cash on his person, or in a strong box in his home, or possessed of accounts receivable, mortgages, notes, or other money that may have been owed him. We note that if any such assets existed, the will made no provision for them.)
The $24,000 did not go to the wife under paragraph Second as "cash in any bank account." Nor did it pass under the bequest to her of testator's personal effects. Decedent was quite specific as to what he meant by "personal effects," for he illustrated what he meant by adding: "to wit, household furnishings, clothing, and any automobile or automobiles that I might own at the time of my death and any stock in the Weehawken Engineering and Manufacturing Company, Inc. of which I might die seized." Not only did he use the restrictive phrase "personal effects," but he also limited that phrase to specific property categories. Child v. Orton, 119 N.J. Eq. 438 (Ch. 1936).
Whether decedent failed to mention the money in his safe deposit box through oversight or for some other reason, we cannot undertake to repair the omission by construing "cash in any bank account" to include cash found in a safe deposit box. There is no basis whatsoever to construe them as meaning the same thing. The testamentary language is clear, and we conclude that the $24,000 must pass as intestate property.
Affirmed.