125 N.J. Super. 56 (1973)
308 A.2d 375
IN THE MATTER OF THE ESTATE OF WILHELMINA SCHUHMANN, ALSO KNOWN AS BILLIE SCHUHMANN, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued April 2, 1973.
Decided July 30, 1973.
*58 Before Judges FRITZ, LYNCH and TRAUTWEIN.
Mr. Harrison F. Durand argued the cause for appellant Philip Schuhmann (Messrs. Durand, Twombly & Imbriaco, of counsel; Mr. Edwin P. Gordon, attorney).
Mr. Robert B. Silverman argued the cause for respondent Joseph G. Boratto (Messrs. Gertner & Silverman, of counsel; Messrs. Boratto & Silverman, attorneys).
The opinion of the court was delivered by FRITZ, J.A.D.
This appeal involves a contest over a decedent's estate.
Wilhelmina Schuhmann died after having executed a common or joint will with her husband, Christian J. Schuhmann, who predeceased her. This will, executed June 21, 1967, provided reciprocally in its first paragraph for a bequest of all the estate of the first to die to the survivor. This paragraph also appointed the survivor to be the executor. The second paragraph provided for the contingency of a common disaster *59 by specific bequests on a percentage basis to particular heirs in each of two classes, one class of which had some sort of affinity with Christian in particular, and the other with Wilhelmina. Each class was to receive an aggregate of 50% of the estate. Only the specified heirs could take; any who predeceased surrendered his inheritance to an equal division among the taking members of that class. The appointment of an executor in the event of this contingency was also accomplished. The final paragraph simply directed cremation.
Christian died December 11, 1970, survived by Wilhelmina. The will was admitted to probate and letters testamentary were issued to Wilhelmina. On June 3, 1971 Wilhelmina died of a self-inflicted gunshot wound, without having executed a new will. Some emphasis is here placed by appellant's argument on the undisputed fact that on April 19, 1971 Mrs. Schuhmann signed the following typewritten note:
 April 19, 1971
In case of my death, before making up a new Will and Testament, I hereby state, that the second part of my deceased husband's CHRISTIAN J. SCHUHMANN'S Will and Testament, to be used in case of common disaster, shall go into effect, as to the distribution of all of my assets. This is to take the place of a new Will and Testament, until such time, when I shall be able to make up a new Will.
 /s/ Billie Schuhmann
 BILLIE SCHUHMANN
It is appropriate to observe here and now that this writing is unwitnessed and does not satisfy statutory requirements for a testamentary devise.
Nine days after Wilhelmina's death Manfred Sitzmann, a beneficiary of the will in the class relating to Wilhelmina, said to be a nephew and allegedly her sole heir and next of kin, in an instrument asserting intestacy as to Wilhelmina, renounced his "right and claim to administration" in favor of one Joseph G. Boratto. Inconsistently enough, considering the averment of intestacy, Boratto presented the June 21, 1967 will to the surrogate for probate and asked that letters *60 of administration with the will annexed be issued to him. The surrogate denied probate on the ground that "the executor and sole legatte [sic] named in the Last Will and Testament of the above named decedent, has predeceased the Testatrix having died on June 21st, 1967 [sic; this is the date of the will] thereby making the will of no effect."
The same day Boratto filed a complaint alleging intestacy ("That your plaintiff, after diligent search, has not been able to discover that said deceased left any Last Will and Testament; * * *"  an egregious misstatement, to say the least, the avoidance of which might have led to an earlier straightening out of this procedural morass), asserting that Manfred Sitzmann was the only next of kin, and seeking the issuance of letters of administration. And on the same day those letters were issued by the surrogate.
Subsequently, Philip Schuhmann, brother of Christian and a beneficiary of the will in the class relating to him, applied to the County Court to vacate the surrogate's aforedescribed actions. A motion for summary judgment by Boratto joined issues, and on the basis of affidavits, briefs, and oral argument, the County Court granted this motion. The will was again denied probate, and the surrogate's judgments remained undiminished.
After the opinion below Schuhmann moved on affidavit for relief under R. 1:7-4 (to amend or add to the court's findings) and R. 4:50-1.[1] The motion was denied.[2]
*61 This appeal from the whole of the judgment and the determination on the motion eventuated.
We are satisfied that the result achieved by the judgment was substantially correct, although the procedural errors are glaring, and the County Court simply misread the second paragraph of the will.
First of all, the will should have been admitted to probate despite the fact that intervening circumstances may have negated the effectiveness of everything therein except its clear revocation of prior wills and its direction for cremation. Apparently the writing complied in all respects with the requirements of N.J.S.A. 3A:3-2. No suggestion before the surrogate, the County Court, or here is to the contrary. No caveat was filed. No doubt is apparent on the face of the will. There was and is no allegation of fraud, undue influence, lack of testamentary capacity, or mistake. No dispute had arisen in the surrogate's court, nor did the surrogate have cause to certify the matter as one of doubt or difficulty in the circumstances then existing. The testatrix is dead and died a resident of this State. Under such circumstances, a will is entitled to probate. In re Gluckman's Will, 87 N.J. Eq. 638 (E. & A. 1917); cf. R. 4:84-1(d). In re Davis Will, 182 N.Y. 468, 75 N.E. 530 (Ct. App. 1905); see In re Sapery, 28 N.J. 599 (1959). The fact that a testamentary *62 instrument properly executed is or may be in large measure inoperative, as here, is not a valid ground for refusing probate.[3] 3 Page on Wills Bowe-Parker ed. 30, § 26.12.
The surrogate's court is one of limited and special jurisdiction. Its jurisdiction is purely statutory, extending to the probate of wills, the granting of letters of administration, and to certain other statutory functions. Mellor v. Kaighn, 89 N.J.L. 543 (E. & A. 1916); 7 N.J. Practice (Clapp, Wills and Administration), § 1910. The surrogate lacks even the power to determine questions arising within the sphere of his responsibility. N.J.S.A. 3A:2-5; In re Watson, 35 N.J. 402, 409 (1961). There is no doubt at all that the surrogate may not undertake to construe a will. For the surrogate here to deny probate, not on the ground of a question relating to the validity of the instrument or its execution but on the basis of his concept of an asserted intestacy, is for the surrogate to arrogate to himself a power of construction exceeding the limited power which is his. 5 N.J. Practice (Clapp, Wills and Administration), § 116.
When the surrogate failed to admit the will to probate, the County Court should have rectified that error before proceeding further. The County Court had at least a reviewing jurisdiction under N.J.S.A. 3A:2-3.
But these errors and the procedural technicalities and niceties which they have inspired in the argument to us and in the foregoing discourse "may safely and should justly be passed by here" toward the end of a determination of the fully submitted merits. In re Watson, supra, 35 N.J. at 407-408.
*63 We turn to those merits. The court below found the will to reveal on its face "an intention not to provide for disposition of the joint estate by the survivor." In effect, the judgment determines that an intestacy resulted. We agree.
The thrust of appellant's argument concerns itself with an averment of the doctrine of probable intent as viable in New Jersey estate law, an assertion of his right to demonstrate the probable intention of the testatrix, and an insistence that an intention is manifested in the will that the estate of the survivor should be distributed pursuant to the common disaster formula which appeared in the will.
We have no doubt about the correctness of the first two postulates. There is no question at all that proper construction of a will involves concern for and giving effect to the probable intent of the testator. Fidelity Union Trust Co. v. Robert, 36 N.J. 561 (1962). And in that effort we are reaching out in a "less confined approach," as Justice Hall says in his dissent in In re Cook, 44 N.J. 1, 11 (1965). He continues:
The whole document [the will] is now perhaps more minutely dissected and extrinsic evidence of surrounding circumstances, before and sometimes even after execution, more readily received. [Ibid.]
The indulgence of this reach is demonstrated by a willingness even to ascribe to the testator impulses which are common to human nature. In re Conway, 50 N.J. 525, 527 (1967). The extensive perimeters of that to be considered in the search for the intent were recently carefully described in Wilson v. Flowers, 58 N.J. 250 (1971), where it is suggested that extrinsic evidence may be admitted to show that an ambiguity actually exists.
But none of this avails appellant here, for no doubt at all appears from the face of the will; the extrinsic evidence which does appear  the note of April 19, 1971  confirms the unambiguous nature of the instrument; and the evidence offered, but properly refused admission, serves not to *64 create and then explain an ambiguity in the will, but at best only demonstrates what Wilhelmina Schuhmann might have been inclined to do and why.
It must not be forgotten that the effort is not to divine that which the decedent intended to do with his estate. Rather, the only proper effort is to ascertain such an intent as it is competently expressed by the testator in a testamentary instrument which satisfies the statute. Even the generosity of Wilson v. Flowers, supra, limits itself to circumstances where doubt exists or can be created in relation to the expressions of the testamentary instrument, and extends the definition of "latent ambiguities" only to those situations where the words of the will could mean different things. 58 N.J. at 262.
In other words, the intent, which has quite properly assumed such a prodigious importance, must be that of the testator at the time of the execution of the will as evidenced to some extent by the writing. In re Klein, 36 N.J. Super. 407 (App. Div. 1955). While the cases cited above suggest that we will construct ambiguity from extrinsic circumstances, if necessary and possible, in order to satisfy this necessity for an expression in the testamentary instrument, they do not suggest giving effect to an intent unexpressed in a writing which satisfies the statute. To hold otherwise would be to disregard the ancient and sound policies underlying the statute of wills. A contrary philosophy would promote fraud, reduce certainty and predictability almost to nothingness, and encourage litigation to the wasting of decedents' estates.
The purpose correctly to be served is to effect the testator's intention where it has been expressed less than perfectly. It is not to effect a suppositious, unexpressed intention, no matter how logically and rationally that intention appears, nor how convinced we are that, had the testator the power to do it all over again, he would have done it a different way. In re Klein, supra.
*65 That there was no intent at the time of the making of the will in question to direct a disposition pursuant to the common disaster contingency provision except in the event of a common disaster, is evident on the face of the will and from the extrinsic evidence. First, the will expressly defines the common disaster contingency, both by the generic term and by the imposition of a conclusive presumption. Then it just as expressly declares null and void such a clause in any other event. Secondly, the note of April 19, 1971 is an express acknowledgement by Wilhelmina of the failure of disposition in her will, for the letter itself directs a disposition until there is an opportunity for her to execute "a new Will and Testament." Particularly since the disposition proposed in that letter is the same as that of the will, we can be certain she knew that such a distribution of the survivor's estate was not the intention at the time of the execution of the will. We have no doubt that her intention in April 1971 was a disposition as in the common disaster clause. But the letter did not satisfy the statute. For us to effectuate that intent by indulging a total fiction in terms of "construing" a will the meaning of which was perfectly plain, would be for us to legislate the statute of wills out of existence.
The evidence which is offered to show probable intent was properly refused admittance. As noted above, there was no room for construction. Secondly, it appears designed to show Wilhelmina's desires, rather than to demonstrate an expression of those desires in the will.
We agree with the court below, and here adjudge, that an intestacy exists. We announce this determination with an awareness of, and respect for, the sound rule which presumes that one who would make a will would not intend an intestacy. But as we said in In re Schmidt, 46 N.J. Super. 369, 381 (App. Div. 1957), "It is not our function to make a will for the testator, but to construe the one he made." In Montclair Trust Company v. Lupher, 44 N.J. Super. 408 (App. Div. 1957), we did not hesitate to declare an intestacy in a situation almost precisely like the one before *66 us now except that two (reciprocal) wills were involved. There the testator (who was a lawyer), like Wilhelmina here, simply did not think of the contingency which later occurred. In Glover v. Reynolds, 135 N.J. Eq. 113 (Ch. 1944), aff'd o.b. 136 N.J. Eq. 116 (E. & A. 1945), the same testamentary situation existed and the same arguments were made. The court held the will "inoperative to pass any of the testatrix' estate." Darpino v. D'Arpino, 73 N.J. Super. 262 (App. Div. 1962), is distinguishable. There was no express nullification in the will of the dispositive clause in the event the deaths did not result from a common disaster. There was no practical interpretation by the testator comparable to Wilhelmina's note of April 19, 1971, here.
The County Court, in denying probate and vacating appellant's show cause order, in effect continued and sanctioned the appointment of the administrator. As in In re Watson, supra, we have concluded that the interests of justice will best be served by the continuance of the administrator, with leave, however, to any interested persons to apply for the designation of a different administrator or such other relief as may be appropriate.
The judgment is modified to conform to the foregoing. No costs.
NOTES
[1] We are not certain whether this motion was served before or after the actual entry of judgment. The opinion below, which was written, is dated May 18, 1972, and said to have been filed on that date. The "order," i.e., judgment, is dated June 19, 1972 and said to have been filed that date. Appellant's brief claims that Schuhmann "applied" to the court for the relief sought on June 14, 1972. But his appendix shows the filing date of both the notice of motion and the affidavit to be June 29, 1972, although each is dated June 14, 1972. Additionally, an exchange of correspondence regarding the form of the judgment suggests a fairly substantial disregard on the part of everyone concerned for the rules of procedure generally and R. 4:42-1 in particular.
[2] As a consequence there is a great deal of material in appellant's brief purporting to show that which he would have advanced had he been permitted. Respondent moved to strike this as outside the record. We reserved decision on the motion. We think appellant is entitled to demonstrate that which he would have shown in order that the ruling below may be reviewed in that light. But the correct way to do this is by an offer below  in this case by incorporating the details to be proved in the affidavit on the motion  in order that the other party may have a fair chance to meet the proofs head on. There could then be no complaint with respect to the extra-record nature of the substance. But in view of our decision, it has become unnecessary to decide the motion in any event.
[3] We do not suggest that total inoperability should produce a different result. 3 Page on Wills (Bowe-Parker ed.) 30, § 26.12. We need not decide that issue here where there was testamentary purpose, if only in the revocation of prior wills and the direction for cremation.