**Simko v. Bob Smith Ford, Inc.**

*Louis P. Vitti,* for plaintiff.
*Michael V. Gilberti, Richard S. Dorfzaun, George M. Weis,* and *Edward A. McFarland,* for defendants.

FINKELHOR, *J.,* March 28, 1978—The above matter comes before the court on the preliminary objections of additional defendants to joinder as contrary to the provisions of the Health Care Services Malpractice Act of October 15, 1975, P.L. 390, as amended, 40 P.S. §1301.101 et seq.

Plaintiff filed her complaint in trespass on August 14, 1977, to recover for personal injuries and property damage resulting from an automobile collision on or about February 25, 1977, and alleges that this accident was caused by the defective condition of a 1974 Ford Pinto vehicle, manufactured by defendant, Ford Motor Company, and sold to her by defendant, Bob Smith Ford.

In paragraphs 30, 31 and 32 of the complaint, plaintiff states that, as a result of defendants' neg-

ligence, she was forced to seek medical assistance and that, in the course of her medical treatment, she suffered further injuries due to the negligence of Dr. J. J. Mikita, South Hills Radiology Associates and St. Clair Memorial Hospital. On October 11, 1977, Ford Motor Company and Bob Smith Ford, Inc., joined these health care providers as additional defendants.

It is the position of additional defendants that the exclusive original jurisdiction to hear and decide a malpractice claim rests with the malpractice arbitration panels under section 309 of the Health Care Services Malpractice Act of 1975 (hereinafter Malpractice Act), and, absent such initial procedure, the court lacks jurisdiction over additional defendants.

It is the position of original defendants, Ford Motor Company and Bob Smith Ford, that Pa.R.C.P. 2252(a) permits the joinder of health care providers, as additional parties responsible for plaintiff's alleged injuries, and the language of the Malpractice Act, supra, does not prohibit or affect this existing practice.

Stated briefly, the issues before the court are: (1) whether a defendant, sued by plaintiff on a non-health service claim, can join the health care providers as additional defendants and (2) whether the joinder of said health care providers invests original exclusive jurisdiction to the arbitration panels provided by the Malpractice Act.

Pa.R.C.P. 2252(a) allows a named defendant to ". . . join as an additional defendant any person whether or not a party to the action who may be alone liable or liable over to him on the cause of action declared upon by the plaintiff or jointly or severally liable thereon with him, or who may be liable to the joining party on any cause of action

which he may have against the joined party arising out of the transaction or occurrence or series of transactions or occurrences upon which the plaintiff's cause of action is based."

The purpose of third party joinder procedures, provided by Rule 2252(a), was to facilitate the disposition of suits involving multiple parties with divergent interests by avoiding multiple suits and consolidating the matter into one action: Ragan v. Steen, 299 Pa. Superior Ct. 515, 331 A. 2d 724 (1974). As a remedial rule, it has been liberally construed and applied: Ragan v. Steen, supra; Coppage v. Smith, 381 Pa. 400, 113 A. 2d 247 (1955); Pa.R.C.P. 126.

Thus, in Incollingo v. Ewing, 444 Pa. 263, 282 A. 2d 206 (1971), original defendant, a druggist, was permitted to join as additional defendants, both the manufacturer of the drug and the physician who prescribed its use. In so ruling, the language of Rule 2252(a) was construed to allow joinder where additional defendant's alleged liability was grounded on a different cause of action but "related to" the original claim.

In American Metal Fabricators Co. v. Goldman, 227 Pa. Superior Ct. 284, 289, 323 A. 2d 891, 894 (1974), the Superior Court restated this principle as follows: "As long as the additional defendants' alleged liability *is related* to the original claim asserted by the plaintiff against the original defendant, the third party complaint should be allowed even though it may not be on the same cause of action as that declared in the original suit." (Emphasis supplied; citations omitted.)

It is no longer necessary under Rule 2252 that either the legal theory or the alleged improper act be the same to support third party joinder.

Thus, prior to the passage of the Malpractice Act

of 1975, a defendant sued for personal injuries, could join a health care provider—i.e., physician, hospital or professional association—allegedly responsible jointly or severally for plaintiff's injuries even though the original cause of action was not grounded in medical malpractice.

The procedure for the litigation of alleged medical negligence claims was changed by the comprehensive Malpractice Act of 1975 to meet mounting insurance and social problems.[1] This statute, recently upheld by the Philadelphia Common Pleas Court, provides for compulsory arbitration of such claims by an arbitration panel composed of two health care providers, two attorneys and three lay or citizen members. The decision of this body is subject to an appeal to the common pleas court and a trial de novo on the claim: Parker et al. v. Children's Hospital of Philadelphia, 3 D. & C. 3d (1977) XXIX (C.P. Phila. 1977).

Section 1301.309[2] of the act, at issue in these proceedings, provides as follows:

"The arbitration panel shall have original exclusive jurisdiction to hear and decide any claim brought *by a patient or his representative* for loss or damages resulting from the furnishing of medi-

---

1. §1301.102: "It is the purpose of this act to make available professional liability insurance at a reasonable cost, and to establish a system through which a person who has sustained injury or death as a result of tort or breach of contract by a health care provider can obtain a prompt determination and adjudication of his claim . . ."

See generally Redish, Legislative Response to the Medical Malpractice Insurance Crises, 55 Texas Law Review 759 (1977).

2. The last sentence of this section was added by the Act of July 15, 1976.

cal services which were or which should have been provided. The arbitration panel shall also have original exclusive jurisdiction to hear and decide any claim asserted *against a nonhealth care provider who is made a party defendant with a health care provider.*" (Emphasis supplied.)

Section 1301.502 provides for the joinder of nonhealth care providers as follows: "At any time up to the selection of the panel members, a party may join any additional party who may be necessary and proper to a just determination of the claim. *The arbitration panel shall have jurisdiction over such additional parties whether they be health care providers or nonhealth care providers.*" (Emphasis supplied.)

Thus, the amended act clearly provides that where plaintiff sues both a health care provider and a nonhealth care provider[3] or where an additional defendant, who is a nonhealth care provider, is joined by any party, the arbitration panel retains jurisdiction. However, there is no similar specific section or language in the legislation to spell out the effect of the joinder of a health care provider by a nonhealth care provider. In the only reported similar case, the Butler County Common Pleas Court transferred the entire proceedings to arbitration under the new act: Staub v. Butler County School District et al. (Butler County C.P. Court A.D. No. 76-118.)[4]

---

3. Thus, in this case, if plaintiff had sued Mikita et al., conceivably Mikita could have joined the present original defendants. However, the definition of a nonhealth care provider is presently in litigation: Gillette v. Redinger, §62 C.D. 1977.

4. Judge Dillon of Butler County dismissed the allegations of misjoinder but ordered the transfer of the *entire* proceedings to the arbitration panels for health care.

Defendants (Ford) argue that the exclusive original jurisdiction set forth in section 309, supra, is limited to a claim brought by plaintiff, or his representative, and that original defendants do not fit within these statutory designations. A careful reading of the language of section 309 supports defendants' position. Obviously, original defendants are not patients and the word "representative" is not defined in the Malpractice Act.

Webster's Unabridged Dictionary defines the word "representative," as it relates to the context of this case, as follows:[5]

"(2) a person duly authorized to act or speak for another or others, agent, delegate, deputy, etc. as a member of an elected legislative body.

". . .

"(4) in law—one who stands in the place of another as heir or in the right of succeeding to an estate or inheritance."

It is a well recognized principle of statutory construction that, when the "words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. §1921(b). Clearly, an adversary party cannot be regarded as a person authorized by the patient to pursue a claim on his behalf.[6]

---

5. The other definitions of "representative" are not relevant to the instant proceedings.

6. In paragraph 31 of the complaint, plaintiff alleges acts of negligence on the part of the medical providers sufficient to have supported a cause of action against these individuals. However, we do not believe that this supports additional defendants' position that these allegations establish original defendants as plaintiff's representatives.

In 1976, the Malpractice Act was amended to clarify the status of nonhealth care providers before the arbitration panels. As previously stated, adjustments were made to include claims of the patient against both health care and nonhealth care providers and to provide for joinder of nonhealth care providers. With such specific amendments, we cannot believe that the fact situation of the present proceedings was not considered by the legislature or its professional and expert advisors. In fact, in the original debates prior to passage, the legislature considered, and failed to pass, specific amendments which would have required, categorically, every malpractice claim to go to the arbitration panels: H.R. Jour. 1975, Vol. 3, at 2250-2296 (July 21); Sen. Jour. 1975, at 869-876 (Oct. 1) and 882-884 (October 2).

As stated in Parker et al. v. Children's Hospital of Philadelphia, supra, at xxxii:

"'Courts are under a special duty to respect the legislative judgment where the legislature is attempting to solve a serious problem in a manner which has not had an opportunity to prove its worth.' Bowie Inn v. City of Bowie, 274 Md. 230, 237 (1975). Quoted in James Johnson v. Francis B. Burch, Attorney General, Baltimore City Court 111/978/6-099191."

It should be further noted, as stated in the brief of South Hills Radiological Associates et al., the administrator for the health care panels has recently ruled that "only nonhealth care providers which [who] are closely associated with the provision of health care services, such as the manufacturer of drugs and medical instruments may be joined as additional defendants." Gillette v. Redinger, M76-

00001, and Gillette v. Redinger, M76-00008.[7] (Additional Defendants' brief, p. 6.)

While the Malpractice Act represents the intent of the Pennsylvania Legislature to procure a speedy determination of malpractice claims against health care providers, there is no indication of a similar intent, to transfer to these arbitration panels, cases primarily grounded on nonhealth care issues. To reach such a conclusion could defeat the very purpose of the malpractice legislation and flood the panels with nonhealth care related cases.[8] We are further persuaded by the failure of the legislature to provide for the joinder of nonhealth care providers in the detailed amendments of 1976 and do not believe that the court should substitute its judgment for that of the legislative body.

An analogous area of original jurisdiction, predicated upon the identity of the parties, is the jurisdiction of the Commonwealth Court over claims brought against the Commonwealth as defendant. In the recent decisions of Ross v. Keitt, 10 Pa. Commonwealth Ct. 906, 308 A. 2d 375, 906 (1973) and Keitt v. Ross, 17 Pa. Commonwealth Ct. 183, 331 A. 2d 582 (1975), the Commonwealth Court drew a distinction between its original jurisdiction over cases wherein the Commonwealth is an *original* defendant and its jurisdiction where the Com-

7. These interpretations are presently before the Commonwealth Court in Gillette v. Redinger, 62 C.D. 1977.

8. To state the problem in the vernacular, this would be a case of "the tail wagging the dog" and establish arbitration procedures for unrelated matters, adding to both the expense and time of processing the claim. Specifically, in the instant proceedings, the panel would have to rule on product liability issues, including, presumably, expert testimony on this issue.

monwealth is merely a third party defendant and distinguished between "indispensable" and "necessary" parties.

In the instant proceedings, plaintiff elected to sue on its product liability claim against two original defendants. Under the procedures of Pa.R.C.P. 2252(a), original defendants are permitted to join as additional defendants those persons whose liability may be "related to" the original claim. However, as the malpractice claim against these health care providers was not filed by the patient (plaintiff), or her representative, we do not believe that the exclusive original jurisdiction of the arbitration panel applies to these proceedings. Therefore, the preliminary objections will be dismissed.

An appropriate order is attached hereto.

## ORDER

And now, March 28, 1978, upon preliminary objections of the additional defendants, St. Clair Memorial Hospital, South Hills Radiology Associates and Dr. J. J. Mikita, to a medical malpractice claim alleged by original defendants, and after full consideration of the briefs and arguments of counsel, it is hereby ordered, adjudged and decreed that said preliminary objections are dismissed. Additional defendants are granted 20 days to file an answer to the complaint to join.

## ADDENDUM TO
## OPINION OF MARCH 28, 1978

FINKELHOR, *J.*, April 12, 1978 — On pages 7 and 8 of the court's opinion in the above captioned

case, a reference is made to Gillette v. Redinger, a case then pending inthe Commonwealth Court at 62 C.D. 1977.

On March 28, 1978, Judge Crumlish filed an opinion to sustain the preliminary objections of the joinder of an additional defendant who was not a health care provider.

In so ruling, the Commonwealth Court stated:

"Our close examination of the Act, considering the provisions of the Statutory Construction Act of 1972, 1 Pa.C.S. §1501 et seq.,[3] leads to the inevitable conclusion that the legislature never intended the Arbitration Panels for Health Care to pass upon questions other than that of medical malpractice. While it is true that Section 502 permits joinder of 'any additional party who may be necessary and proper to a just determination of the claim,' still the 'claim' intended to be justly determined is one 'for loss or damages resulting from the furnishing of medical services which were or which should have been provided.' Sections 309 and 401. . . . Were we to hold to the contrary, the Arbitration Panel would have jurisdiction over virtually every type of tort claim which contributes, however remotely, to an injury which is also partly caused or aggravated by an act of malpractice. We may not assume that the legislature attempted to place so impossible a burden upon the Arbitration Panels in the absence of clear language in the Act indicating its intention to do so."

The above decision further supports our opinion and order in the above captioned matter.