687 A.2d 1047

IN THE MATTER OF THE ESTATE OF MABEL M. BAKER.

Superior Court of New Jersey
Appellate Division

Submitted January 14, 1997—Decided February 4, 1997.

204

Before Judges DREIER and D'ANNUNZIO.

*Robin D. Buser*, attorney for appellants Michael W. and Louise T. Alcott.

*Kulzer & DiPadova*, attorneys for respondents Karen A. Cutler and William Alcott, Executors (*Glenn A. Henkel*, on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

Defendants, Michael W. and Louise T. Alcott, appeal from an order of the Chancery Division, Probate Part, requiring them to reimburse the Estate of Mabel M. Baker in the amount of $18,150, representing the transfer inheritance tax paid as a result of the inter vivos transfer to defendants of decedent's Medford, New Jersey home. Decedent Mabel Baker executed her Last Will and Testament on June 13, 1994, specifically devising to Michael Alcott the Medford property she owned. The will also contained a tax

apportionment clause which would have relieved Michael of the burden of estate and inheritance taxes on the property. Approximately two weeks later, on June 29, 1994, decedent executed a deed transferring the property to herself and defendants as joint tenants.

Decedent died at the age of ninety-nine on May 20, 1995. She was survived by the children of her nieces and nephews. Decedent's will was admitted to probate by the Burlington County Surrogate's Court on June 13, 1995. Also on that date, Letters Testamentary were issued to plaintiffs Karen A. Cutler and William F. Alcott, the co-executors appointed in the will.

Decedent's will contained the following tax apportionment clause:

> I ... direct that all estate and inheritance taxes be paid from the general funds of my estate in order that the beneficiaries hereinafter named may receive the full legacies or devises so given to them.

Further, the "general funds" to be used for the payment of decedent's "debts, funeral expenses, taxes and administration costs, as provided in the [tax apportionment clause]" were defined as "[t]he net proceeds from all [decedent's] bank accounts and certificates of deposit. . . ."

In paragraph two of her will, decedent specifically devised her property at 84 North Main Street, Medford, to her grandnephew, defendant Michael Alcott. This was the same property that was deeded to Michael, his wife, and decedent as joint tenants slightly more than two weeks after the execution of the will.[1]

The issue in this case is whether decedent's direction in her will for the inheritance taxes to be paid from the "general funds" of her estate should be applied to the real estate deeded to defendants. Plaintiffs obtained an order to show cause why defendants should not be required to pay the inheritance taxes on the real

---

[1] Defendants assert both in their statement of facts and in their first point that the deed was drafted on the same date as the will, but that the deed was executed two weeks later. However, they offer no evidence of this alleged fact, and the face of the deed does not indicate the date on which it was drafted.

estate. *R.* 4:95–2. After argument on the return date of the order, the judge determined that the inheritance taxes on the deeded property were not to be paid by the estate.

Defendants argue that the trial court should have at least inquired into decedent's dominate intent because of the "unusual circumstances" of the deed making defendants and decedent joint tenants despite the fact that the will devised the same property to Michael alone. Defendants believe they were entitled to "present testimony of vital participants to the preparation and execution of the Will and Deed instruments."

■ The trial court noted that what decedent was communicating in the will, and the effect of the subsequent deed, was that:

> if you get something, whether it's real or personal property under the will, and if in doing that it would otherwise cause taxes to have to be paid I want the estate to pay them. I want the person to whom a bequest or devise is made to get it net, free and clear so to speak.... Well, there was something that wasn't through the will and it ... was not ... just an inadvertent substituted action.... [It] was a deed to the grandnephew and someone else, so its not now the same as paragraph second.... So it takes it out of being probate property....

Although defendants' counsel represented to the trial court that it could put on witnesses to testify that decedent did not intend to remove the property from the tax apportionment clause, the judge nevertheless found that the offered testimony would not prove that decedent did not intend for defendants to pay the disputed taxes. He found that there was no ambiguity, and thus there was no need to hold an evidentiary hearing to look for decedent's intent. The judge held: "By making the property non-probate property[,] the inheritance taxes are the responsibility of [defendants]...." We review the court's findings as if they were made after a summary judgment motion. *Compare R.* 4:67–5 *with R.* 4:46–2. The proofs before the court were documentary, and if they raised a substantial issue of fact, a plenary hearing, albeit a limited one, would have been necessary. *R.* 4:67–5; 4:46–3(b).

Under *N.J.S.A.* 3B:3–33:

> The intention of a testator as expressed in his will controls the legal effect of his dispositions, and the rules of construction expressed in *N.J.S.* 3B:3–33 through

*N.J.S.* 3B:3–48 apply, *unless the probable intention of the testator, as indicated by the will and relevant circumstances, is contrary.*

[Emphasis added.]

In the present case, unless the doctrine of "probable intent" requires that the trial court should have taken testimony, the strict language of the will indicates that defendants should pay the disputed taxes. As plaintiffs properly note, *N.J.S.A.* 3B:24–5 limits the effect of a tax apportionment clause "to the property passing [under the will] unless the will ... otherwise directs." The section also permits such a direction in "a non-testamentary instrument," but the deed here, the only other relevant instrument, contains no tax apportionment language. Therefore, in the language of *N.J.S.A.* 3B:24–5, "the will or other instrument" did not "otherwise direct[ ]."

■ The deed of the property to Michael, as opposed to the interest deeded to his wife, Louise, might however be considered an advancement of the property devised in the will, and therefore sufficiently tied to the declaration in the will to give the apportionment clause effect. Ordinarily, property mentioned in a will which has been destroyed or transferred to another during the decedent's lifetime is held to be an ademption. *See White v. White,* 105 *N.J.Super.* 184, 188, 251 *A.*2d 470 (Ch.Div.1969); *In re Burnett,* 49 *N.J.Super.* 439, 443–444, 140 *A.*2d 242 (Cty. Ct.1958); *In re Estate of Cooper,* 95 *N.J. Eq.* 210, 212, 123 *A.* 45 (E. & A.1923); *see also Herschberg v. Director, Div. of Taxation,* 2 *N.J. Tax* 121, 127 (Tax 1981). However, under the common law, when specific property given under a will is transferred to the beneficiary during the testator's lifetime, the will's provisions were deemed revoked, as the testator was deemed to have changed his or her mind regarding the devise. *Hattersley v. Bissett,* 51 *N.J. Eq.* 597, 603, 29 *A.* 187 (E. & A. 1893). The absolute import of this rule must be lessened following this State's adoption of the probable intent rule in *Robert.* Of course, where the donee of the property claims entitlement to both the gift made and the provision under the will, there is now a factual question to be resolved, whereas under *Hattersley* the claim would have been barred. We need not

explore the somewhat arcane authorities relating to ademptions and advancements because in this case the identical property, or at least Michael's share thereof, was both devised and deeded to him, and he makes no additional claim against the estate because the devised property was no longer owned by decedent at her death.

The doctrine of probable intent in New Jersey was expanded and explained in the seminal case *Fidelity Union Trust Co. v. Robert*, 36 N.J. 561, 178 A.2d 185 (1962).[2] There, the Court stated that "the judicial function in construing the will [is] to ascertain and give effect to the 'probable intention of the testator.'" *Id.* at 564, 178 A.2d 185 (citation omitted). In undergoing this task, "courts will give primary emphasis to [the testator's] dominant plan and purpose as they appear from the entirety of his will *when read and considered in the light of the surrounding facts and circumstances.*" *Id.* at 564–65, 178 A.2d 185 (emphasis added). Therefore, "[s]o far as the situation fairly permits, courts will ascribe to the testator[ ] 'those impulses which are common to human nature, and will construe the will so as to effectuate those impulses.'" *Id.* at 565, 178 A.2d 185 (citation omitted). Thus, "the court's endeavor is to put itself in the testator's position insofar as possible in the effort to accomplish what he would have done had he 'envisioned the present inquiry.'" *Id.* at 565–66, 178 A.2d 185 (citation omitted).

The Court reiterated this doctrine in *In re Estate of Burke*, 48 N.J. 50, 64, 222 A.2d 273 (1966):

> While a court may not, of course, conjure up an interpretation or derive a missing testamentary provision out of the whole cloth, it may, on the basis of the entire will, competent extrinsic evidence and common human impulses strive reasonably to ascertain and carry out what the testator probably intended should be the disposition if the present situation developed.

Furthermore, in *Wilson v. Flowers*, 58 N.J. 250, 260, 277 A.2d 199 (1971), the Court added, "Where the probable intent is ... mani-

---

[2] The pre-*Robert* case *In re Estate of Flynn*, 69 N.J.Super. 544, 174 A.2d 520 (Ch.Div.1961), cited by plaintiffs, is readily distinguishable.

fest by extrinsic evidence, the court may not refuse to effectuate that intent by indulging in a merely literal reading of the instrument." Also in *Wilson*, the Court was clear that in determining whether to employ the doctrine of probable intent:

> [T]he significant point is that there is an ambiguity at all. And in deciding whether there is an ambiguity, a court should always admit extrinsic evidence ... since experience teaches that language is so poor an instrument for communication or expression that ordinarily all such evidence must be examined before a court can be satisfied of whether an ambiguity exists. (Citation omitted). We do not, of course, mean to imply that such evidence can be used to vary the terms of the will, but rather that it should be admitted first to show if there is an ambiguity and second, if one exists, to shed light on the testator's actual intent.
>
> [*Id.* at 263, 277 A.2d 199.]

*See also Engle v. Siegel*, 74 *N.J.* 287, 291–294, 377 *A.2d* 892 (1977) (summarizing and approving the use of this standard when determining testator's intent).

■ Post-*Robert* courts have also made it clear that the extrinsic evidence to be examined is not limited to what was known to the testator at the time of the execution of the will. The Supreme Court, in construing *Robert*, stated, "Not only may the circumstances surrounding the execution of the will be admitted but so also may the circumstances from then on until the testator's death." *In re Estate of Cook*, 44 *N.J.* 1, 6, 206 *A.2d* 865 (1965). *See also In re Wolf*, 98 *N.J.Super.* 89, 94, 236 *A.2d* 166 (App.Div. 1967) (citing the *Cook* rule as quoted above); *In re Estate of Hays*, 128 *N.J.Super.* 460, 465, 320 *A.2d* 234 (Cty.Ct.1974) (expressing similar sentiments). Of course, probable intent means the intent of the testator "at the time of the execution of the will as evidenced to some extent in the writing." *In re Estate of Schumann*, 125 *N.J.Super.* 56, 64, 308 *A.2d* 375 (App.Div.), *certif. denied*, 63 *N.J.* 569, 310 *A.2d* 484 (1973); see also *In re Estate of Griswold*, 140 *N.J.Super.* 35, 47, 354 *A.2d* 717 (Cty.Ct.1976).

■ Therefore, we must determine first whether there is indeed an ambiguity in the will. Even this may be accomplished through the use of extrinsic evidence. *Wilson, supra*, 58 *N.J.* at 263, 277 *A.2d* 199. It appears that this should have been done at the return of the order to show cause. Michael was a beneficiary

named in the will who was deeded the real estate devised to him in the will. At the least, there was an ambiguity regarding whether the testator had directed that Michael take the deeded property free of inheritance taxes. Because of this ambiguity, extrinsic evidence should have been admitted "to shed light on the testator's actual intent." *Ibid.* What the court should have determined was whether decedent intended that non-probate transfers of defined property to named beneficiaries were also to be covered in the tax apportionment clause.

It would have been clearer if decedent had made the provision more precise. *Cf. In re Estate of Berman,* 49 *N.J.Super.* 95, 97–98, 139 *A.*2d 138 (Cty.Ct.1958) (holding that decedent "directed in his will that estate taxes on property passing both under and outside his will be paid out to the residuary" because will specifically provided for "property . . . disposed of by me, whether under this, my will or [under] any other conveyance made by me. . . ."). But, under *Robert* and *Burke,* the trial court should have "put itself in the testator's position . . . in the effort to accomplish what [s]he would have done had [s]he 'envisioned the present inquiry.'" *Robert, supra,* 36 *N.J.* at 565–566, 178 *A.*2d 185; *see also Burke, supra,* 48 *N.J.* at 64, 222 *A.*2d 273. In putting itself in the testator's position, the court should be mindful of the human impulses described in *Robert.* 36 *N.J.* at 565, 178 *A.*2d 185. If extrinsic evidence was required, the judge should have heard testimony at a plenary hearing.

As Louise Alcott was not a beneficiary specifically named in the will, tying her grant under the deed to the will is more difficult, perhaps requiring further evidence of the decedent's intent. It is true that decedent's deed transferred the property to herself and both defendants as joint tenants, while in the will defendant Michael, the grandnephew, was the only devisee. On remand, the judge should put himself in the shoes of a woman in her late 90's and ask: Was it likely she meant there to be no difference in the two dispositions? He should determine whether she intended both devisees, or even only Louise Alcott, to pay the tax, when in

fact decedent had already apparently left one of them the property tax-free in her will.[3] Perhaps there is evidence of decedent's relationship with Louise that would shed light on this intent. If so, it should be produced. Absent such evidence, the court will be required to balance Louise having been omitted from the will's provisions against both the gift made to her soon after the will was executed and the lack of difference in the terms of the gift to her and Michael.

Even though the scrivener is deceased, defendants' counsel proffered testimony of two people familiar with both the terms of the will and the deed whom he said would demonstrate decedent's intent. The attorney stated he would "show as an offer of proof that there was no intent [on the part] of Mabel Baker to change what her original [bequest] would provide...." He added that a paralegal would testify that "it was still Mabel Baker's intent that the property go to Michael Alcott free of the taxes." Additionally, if in fact there is proof that the deed and will were drawn on the same day, the intent may be even stronger.

■ "The court may not refuse to effectuate [decedent's] intent by indulging in a merely literal reading of the instrument." *Wilson, supra,* 58 *N.J.* at 260, 277 *A.*2d 199. Thus we find that the trial judge mistakenly refused to hear this testimony. *Wilson* clearly states that the evidence should have been admitted to show both whether there was an ambiguity and then, if one exists, to resolve that ambiguity. *Id.* at 263, 277 *A.*2d 199. Applying these principles to the facts of this case, we find strong evidence of an intent on the part of decedent to relieve Michael from the payment of inheritance taxes on the property conveyed to him. But a

---

[3] While the judge stated at oral argument for the order to show cause that he "kn[e]w there was no need to do this [transfer the property by deed] other than to protect ... Louise," there are obvious tax implications to this transfer. If decedent had lived for three years after executing the deed, the transfer inheritance tax would have been avoided as the gift would be deemed to have been made not in contemplation of death. *N.J.S.A.* 54:34–1C (we note an obvious mistake in the wording of paragraph two of this section, but its intent is clear).

factual issue remains, and must be decided after an evidentiary hearing. *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 666 *A.*2d 146 (1995). We see a slightly different factual issue, however, concerning Louise's interest, which also should be resolved after an appropriate hearing.

The order appealed from is reversed. The trial court shall determine after an evidentiary hearing whether the inheritance taxes imposed upon Michael Alcott's and Louise Alcott's interests in the deeded property should be satisfied from the estate's general funds. The matter is remanded for such a hearing. We do not retain jurisdiction.