907 A.2d 1024

IN THE MATTER OF THE ESTATE OF NICHOLAS
REININGER, DECEASED.

Superior Court of New Jersey
Chancery Division Probate Part
Union County

Decided May 18, 2006.

*Joseph M. Nardi, III*, attorney for Margaret Gartlan and June Caffrey Meehan, the successor executrices and trustees of the Estate of Nicholas Reininger, (*Brown & Connery*, attorneys).

*Laurie Rush–Masuret*, attorney for Ronald A. Zanoni, executor of the Estate of Edwin A. Dolan, Jr.

LYONS, P.J.Ch.

This case addresses when a remainder vests, the prerequisites for the application of the doctrine of probable intent and the proofs needed to prevail in a probable intent contest.

The facts presented in the case are as follows.

The interpretation of the will of Nicholas Reininger ("Will") is before the court. Nicholas Reininger ("Decedent") died on July 19, 1990 leaving a Last Will and Testament dated February 1, 1974. The Will was admitted to probate on August 17, 1990. Martha Reininger ("Martha"), the decedent's widow, and Edwin A. Dolan, Jr. ("Edwin"), the decedent's nephew, were appointed co-executors and co-trustees of the estate. The Will provided two specific bequests to individuals and the residue of the estate was bequeathed to Martha to be held in trust. The trust was to pay the income to Martha until she died or until she remarried. Upon either the death or remarriage of Martha, the residue of the trust was distributed in specific dollar amounts to several charities and relatives and the remaining residue was divided into five equal shares and bequeathed to Nicholas' two nieces and two nephews in trust. Martha and Edwin qualified as co-trustees for Martha's trust.

Of the five equal shares in the residuary trust, Edwin was bequeathed two shares, and Margaret Bultman ("Margaret"), June Caffrey ("June") and William J. Dolan ("William") each received one share which were to be held in trust for each of them. The Will provided that Edwin's share would be paid to him annually in the amount of ten thousand dollars from the principal and income until the entire amount was exhausted. The provisions for Margaret and June were similar, however a few notable differences were present. Margaret and June each received an annual gift of five thousand dollars and the Will provided that their surviving children would receive their annual gift if they died before the entire amount of the trust was paid out. William's bequest provided a five thousand dollar annual gift as well, however the Will provided that if William died before the entire

amount was paid, his share would be paid to Edwin, Margaret and June. Unlike the provisions for Margaret, June and William, the Will did not specify what would happen to Edwin's share of the trust if he died before the full amount of the trust was paid out to him.

Edwin died on January 24, 2004, which was before the termination of Martha's trust. His estate was probated in Morris County and Ronald Zanoni was appointed the executor of his estate. Subsequently, Martha Reininger died on April 15, 2005. Her death, pursuant to the terms of the Will, terminated her trust. Upon Martha's death Margaret Gartlan ("Gartlan") and June Meehan ("Meehan"), the decedent's grand-nieces, were appointed successor executrices and successor trustees under Decedent's estate. Gartlan and Meehan were qualified with the Surrogate on May 25, 2005. The assets that remain in the Reininger trust are the subject of the action before the court.

On February 21, 2006 a Verified Complaint was filed with the Surrogate by Mr. Zanoni seeking a declaration that the residuary bequest to Edwin vested upon the Decedent's death, that Edwin's estate is entitled to this bequest and that the Reininger estate provide a full accounting. In lieu of an Answer to this Complaint, Gartlan and Meehan, as the successor executrices and trustees of Nicholas Reininger's estate, filed a Verified Complaint on February 27, 2006. Gartlan and Meehan's Verified Complaint seeks a declaration that Edwin's share of the trust should be distributed to the surviving Reininger beneficiaries, namely Margaret and June's children and William.

The issue before the court is whether Edwin's bequest under the Will vested at the time of Nicholas' death. While this issue in not addressed in the New Jersey Statutes, a significant discussion is presented in the New Jersey Practice Series. Volume 6 devotes the entirety of Chapter 7 to "Vesting of Future Interests." 6 *New Jersey Practice Wills and Administration,* at § 571 to § 591, at 96 (Clapp and Black) (3rd ed. 1984). Section 571 defines a vested interest as property in which there is "a present unconditional

right to a future enjoyment." 6 *id.* at 97. A contingent interest is defined as one that is dependent on the termination of the prior estate and one in which the person is not in being, is unascertained or the estate is made contingent on an uncertain event. *Id.* § 572 at 100.

In addition, the courts have defined and discussed vested versus contingent interests in many cases throughout the past century. *Cody v. Fitzgerald,* 2 *N.J.* 93, 65 *A.*2d 750 (1949), is the leading authority on this subject and the New Jersey Supreme Court's decision has been upheld for over fifty years. In *Cody* the Court found that:

> [a] vested remainder is defined as one to which there is a present fixed right to future enjoyment of property though that enjoyment be postponed until the expiration of a prior estate. A contingent remainder on the other hand, is one in which the person to take is not *in esse* or ascertained, or the event upon which enjoyment is to take place is uncertain, or both.
>
> [*Id.* at 96–97, 65 *A.*2d 750 (citations omitted).]

The Court stated that the law requires that "devises in all cases, unless clearly inconsistent with the intention of the testator, should be held to be vested rather than contingent." *Id.* at 97, 65 *A.*2d 750. Plaintiff argues that Edwin had a present fixed right to future enjoyment of the trust, even though the enjoyment was postponed until the death or remarriage of Martha. In *Cody* the Court relied on *Howell v. Green,* 31 *N.J.L.* 570, 572 (E. & A.1864) in stating that:

> where it appears from the entire will that the only reason for postponing the enjoyment of a gift is to let in some other interest, the gift is deemed presently vested—the ownership passes at once though the time of enjoyment is postponed. So it has become the settled rule that a devise of a remainder limited upon a particular precedent estate, determinable on an event which must necessarily happen, will be construed as vesting the remainder estate at the time of the death of the testator unless his will clearly indicates a contrary intention.
>
> [*Cody, supra,* 2 *N.J.* at 97, 65 *A.*2d 750; *see Post v. Herbert's Executors,* 27 *N.J. Eq.* 540 (E. & A.1876); *Kinkead v. Ryan,* 64 *N.J. Eq.* 454, 457, 53 *A.* 1053 (Ch.1903); *Redmond v. Gummere,* 94 *N.J. Eq.* 216, 119 *A.* 631 (E. & A.1922).]

Although Martha's remarriage was not a definite event, her death was an event that would necessarily happen. Therefore, the gifts to Edwin and the other beneficiaries vested at the time of Nich-

olas' death and were only postponed to allow Martha an intervening life estate.

Moreover, the Will does not clearly indicate a contrary intention with respect to Edwin's share. The Will provides a contrary intention in the event that Margaret, June or William died prior to receiving their full share of the trust. If Margaret or June died prior to Martha or died prior to receiving their full trust amount, the Will clearly states that Margaret and June's children would share in their mothers' bequests. If William died prior to Martha or died prior to receiving his full trust amount, the Will stated that his bequest would be placed back into the residue and distributed to the remaining three residuary beneficiaries. With no explicit contingencies provided by the testator with respect to Edwin's bequest, the court is bound to find based upon the cases cited above, that the bequest vested upon Nicholas's death although it could not be enjoyed until the remarriage or death of Martha.

However, *Teets v. Weise,* 47 *N.J.L.* 154 (E. & A.1885), poses a question similar to the question before the court today and raises an additional argument that should be addressed. In *Teets,* the decedent's will devised certain lands to his daughter Julian Ver Noy during her life and at her death the property was devised to "all of her children and the issue of any deceased child or children ... that may be living at her decease." *Id.* at 154. At the time the testator died his daughter Julian was alive and she had five living children. *Id.* at 155. One of Julian's children, Richard Ver Noy, died several years before his mother and without children. Ibid. The question presented to the court in *Teets,* was "whether Richard, who died before his mother, took, under the will, a vested or a contingent estate in the lands." *Ibid.*

In *Teets* the court looked to the language of the will to determine the testator's intent. *Id.* at 156. The court concluded that the language clearly indicated that the lands "devised to [Julian] for life should not vest in any of her children who did not survive her." *Ibid.* The court added that the testator "intended to keep the estate in those children and grandchildren of his daughter who

survived her," and did not want any of the predeceased children to pass their share to a stranger rather than his bloodline. *Ibid.*

The argument put forth by the successor executrices of the Decedent's estate is similar to that in the *Teets* case. They argue that the court should rely on the probable intent of the Decedent because the death of Edwin creates a contingency which the Decedent did not provide for in his Will. In support of their position, the executrices of the Decedent's estate rely on the analysis set forth in *Engle v. Siegel*, 74 *N.J.* 287, 377 *A.*2d 892 (1977).

In *Engle,* Albert and Judith Siegel, husband and wife, died with their two children in a hotel fire in Denmark. *Supra,* 74 *N.J.* at 289, 377 *A.*2d 892. Albert and Judith's wills each contained a clause that provided for their estates to be divided between their respective mothers, Rose Siegel and Ida Engle in the event of their common death. *Ibid.* In *Engle,* the will contest arose because Rose Siegel predeceased the testators. *Ibid.* Ida Engle argued that pursuant to *N.J.S.A.* 3A:3–14 (now *N.J.S.A.* 3B:3–37), if one residuary beneficiary dies before the testator, their share of the residue would be distributed to the remaining residuary beneficiaries. *Ibid.* The lower courts agreed with the position advanced by Ida Engle. *Id.* at 290, 377 *A.*2d 892. The Supreme Court granted certification and reversed the lower courts' decisions based on the doctrine of probable intent. *Ibid.* The Court found that the statute does not preclude a probable intent search of the testator and "[n]ot until the quest for probable intent has proven fruitless, will there be any occasion to resort to the statute." *Id.* at 294, 377 *A.*2d 892.

In *Engle,* the Court stated that a resolution based on probable intent is appropriate if certain inquiries are made. *Id.* at 293, 377 *A.*2d 892. First, the court must identify "a contingency for which no provision is made in the will ... occurred." *Ibid.* Second, the court must carefully study the family circumstances and the plan of testamentary disposition set forth in the will. *Ibid.* Finally, the court must place itself in the position of the testator and

determine how the testator would probably have responded to the contingency if the testator had, in fact, envisioned the contingency. *Ibid.*

The facts in *Engle* can be distinguished from the facts in this case. In *Engle* the Court stated:

[w]e are satisfied that the death of Rose Siegel, prior to the tragic deaths of the testators, *was a contingency* not treated specifically in the wills and *not actually foreseen or anticipated by the testators.* That inference can be readily drawn from an examination of the wills in their entirety, noting especially the numerous provision therein for gifts or bequests over to named legatees upon death or failure to survive, indicating clearly enough that the testators were mindful of contingencies of this sort and did anticipate dispositions to be made where this occurred. The failure to make a similar provision in the event of the premature death of either mother, where to do so would be completely logical and in keeping with the tenor of the wills, must be ascribed to inadvertence. It is not to be inferred that that omission was purposeful or that, by implication, an intestacy was intended, or that a gift over by operation of the statute was desired. We thus have no hesitancy in concluding *that one element justifying the quest for probable intent has been established in this case, namely, that there has indeed occurred a contingency not foreseen or anticipated when the wills were drafted.*

[*Id.* at 294–95, 377 A.2d 892 (emphasis added).]

In the case at hand, such a contingency was foreseen and anticipated by the Decedent. The Will addressed the contingency that Edwin might die before receiving his full bequest. While the Will does not provide for a contingent plan of distribution in the event that Edwin died before he received his full share of the trust, it did contemplate and addressed Edwin dying before receiving his bequest. Paragraph Twelfth highlights the testator's extensive estate plan and states in relevant part:

[i]n the event that my Trustee, my nephew, EDWIN A. DOLAN, named in the SEVENTH CLAUSE of this my Will shall die before the entire amount of the principal and income of the trust for him as stated in the said SEVENTH CLAUSE shall be paid over to him I appoint in his place and stead as said Trustee my grand-niece JUNE CAFFREY and my grand-niece, MARGARET GARTLAN

As evidenced by this section of the Will, the Decedent foresaw that Edwin might die before his trust terminated. The Decedent envisioned a situation in which Edwin would not live to see the full distribution of his share of the trust and named alternate fiduciaries to carry out the distribution of this bequest.

While the court in *Engle* ultimately decided that it was the testators' intention to divide their estates equally among their surviving families, one-half to the Siegels and one-half to the Engles, Justice Clifford's dissenting opinion is instructive to this court. The Justice opined that "an ambiguity in the instrument is the condition which triggers the doctrine's application to change the result which would attend a literal application of the language of the will." *Engle, supra,* 74 *N.J.* at 298, 377 *A.*2d 892 (Clifford, J., dissenting); *see Wilson v. Flowers,* 58 *N.J.* 250, 263, 277 *A.*2d 199 (1971).

In *In re the Estate of Baker,* 297 *N.J.Super.* 203, 210, 687 *A.*2d 1047 (App.Div.1997) the Appellate Division stated that "in deciding whether there is an ambiguity, a court should always admit extrinsic evidence." Such extrinsic evidence includes what the testator knew at the time the will was executed and circumstances from that time until the testator's death. *Ibid.; see In re Estate of Cook,* 44 *N.J.* 1, 6, 206 *A.*2d 865 (1965); *see also In re Estate of Wolf,* 98 *N.J.Super.* 89, 94, 236 *A.*2d 166 (App.Div.1967).[1] Black's Law Dictionary defines ambiguity as "[d]uplicity, indistinctness, or uncertainty of meaning of an expression used in a written instrument." *Black's Law Dictionary* 79 (6th ed. 1990). The word ambiguous is defined by Webster's Dictionary as "having two or more possible meanings, not clear; definite; uncertain; vague." *Webster's New World College Dictionary,* 43 (4th ed. 2001).

When reading the Will one may find that Edwin's trust provision in the Will is ambiguous because there is no explicit contingency plan of distribution upon Edwin's early demise. The argu-

[1] In *In re the Estate of Baker,* the court reasoned that because the proofs submitted to the trial court in a will interpretation case were documentary and raised an issue of fact, a limited plenary hearing was necessary. *Id.* at 207, 687 *A.*2d 1047. Ultimately the Appellate court remanded the matter to the trial court for an evidentiary hearing. *Id.* Here, on May 3, 2006 the court conducted a telephone conference with counsel for the parties, regarding need for a plenary hearing. Both counsel informed the court that they did not believe oral testimony at a hearing was necessary and wished to rely on the papers presented and previous oral argument before the court.

ment can be made that this section of the Will may be interpreted in two or more ways. One way would be to find that Edwin's share of the trust reverts back to the other residuary beneficiaries upon his death. The other way would be that Edwin's estate receives his yearly distributions from the trust. Thus, arguendo, this portion of the Will is ambiguous and it must be determined if the burden of proving the testator's probable intent was met from the proofs submitted.

When discussing the doctrine of probable intent, both *Engle* and *In re the Estate of Baker* made reference to and relied upon the seminal case of *Fidelity Union Trust Co. v. Robert,* 36 *N.J.* 561, 178 *A.*2d 185 (1962). *Fidelity Union Trust Co.,* clarified and expanded the doctrine of probable intent in New Jersey. In *Fidelity Union Trust Co.,* the Court stated "that the object is to ascertain 'the probable intent' of the testator by a 'preponderance of the evidence' and to carry it out in accordance with his wishes 'even though they be imperfectly expressed.'" 36 *N.J.* at 565, 178 *A.*2d 185 (citations omitted). Under the preponderance of the evidence standard "a litigant must establish that a desired inference is more probable than not. If the evidence is in equipoise, the burden has not been met." *N.J.R.E.* 101(b)(1)(2006); *see Cvelich v. Erie Railroad Co.,* 120 *N.J.L.* 414, 199 *A.* 771 (Sup.Ct.), *aff'd* 122 *N.J.L.* 26, 4 *A.*2d 271 (E. & A.1938), *cert. den.* 307 *U.S.* 633, 59 *S.Ct.* 1033, 83 *L.Ed.* 1516 (1939). The evidence must be such as to lead a reasonably cautious mind to a given conclusion. *Bornstein v. Metropolitan Bottling Co.,* 26 *N.J.* 263, 274–75, 139 *A.*2d 404 (1958). The evidence must demonstrate that the offered hypothesis is a rational inference, that it permits the triers of fact to arrive at a conclusion grounded in a preponderance of probabilities according to common experience. *Joseph v. Passaic Hospital Ass'n.,* 26 *N.J.* 557, 574–75, 141 *A.*2d 18 (1958).

Thus, the court must review the evidence submitted by Decedent's estate to determine whether it meets the burden of proving the intent of the Decedent by a preponderance of the evidence. The first piece of evidence is William's May 25, 2005 letter to the

court. The letter from William and his certification discuss his perception of his uncle's wish to keep the money in the bloodline. William begins his letter by stating that the letter's purpose is to "elaborate *my personal impressions* of Uncle Nick's intentions for the ultimate distribution of the assets." (emphasis added). He discusses the fact that his adopted son Billy would not receive any residuary share of the trust, because if William died prior to his full distribution of the trust Uncle Nick wanted the money to go to remaining blood heirs. He states that "[i]t's *my belief* that Uncle Nick wanted his assets to pass only to family members and religious organizations." (emphasis added). Finally, he concludes by stating "*I believe* it was Uncle Nick's intention that Ed's 2/5 share of this trust be put back in 'the pool' and divided amongst the remaining living 'blood' heirs." (emphasis added).

While the court does not believe that William's statements are made with any self-interest or malice, it is also aware that these assertions are merely William's personal beliefs and speculation and are not direct evidence of Nicholas' probable intent. William does not offer any specific recollections of conversations with his uncle nor does he offer any concrete evidence that his son Billy is not a residuary heir merely because he is adopted.

Similarly the certification of Margaret is an account of her personal beliefs that "close family relations and strong religious convictions were the cornerstone of [the Decedent's] life," and that "it was [Uncle Nick's] intention that Ed's trust share was to be divided among the remaining blood heirs." These personal opinions shed light on the relationships that the Decedent had with his family and his obvious affection for his nieces and nephews, however, these statements do not meet the evidentiary standards of proving probable intent.

Margaret also provided counsel and the court with typed and handwritten notes and letters of Edwin which discuss his opinion of the potential problems existing with the Will and related trusts. First, as argued by Edwin's estate, those documents are protected by the attorney-client privilege and the work-product doctrine

because they were written to Edwin's attorney during negotiations involving a payment of the trust fund to Martha.[2]

Secondly, while these documents do express a concern of Edwin, the documents are merely statements of his tentative opinions. He poses several questions to his attorney in his notes, one of which is, "what becomes of my $10,000 annual payout" in the event he dies before the trust is depleted. He raises as a possible outcome that "the logical conclusion would *seem* to be: my heirs get zip; my annual draw remains in the trust." (emphasis added).

Prior to posing this question and his personal conclusions though, Edwin discusses what happens to the bequest of 150 shares of AT&T stock to Marilyn Alexander, Decedent's niece by marriage, upon Martha's death or remarriage. He writes-"If [Marilyn] dies before Martha, it seems apparent nothing goes to her husband or children. No contest, I assume, *but Nick would not have wanted it that way, of that I am certain.* This represents a solid moral basis for immediate settlement." (emphasis added). This statement by Edwin that the Decedent would not want a niece by marriage's family cut out of the bequest, runs counter to the other testimony that only blood relatives should take.

As Edwin states in his letter and Margaret addresses in her certification, these documents were written to Edwin's lawyer to discuss the possibility of "breaking" or reconstructing the Will to make sure that the Decedent's wishes were accurately reflected. More specifically Edwin wanted to make sure that Decedent's relatives, other than Martha, received a share of his estate, specifically, "[i]f the Will is executed as written, with the exception

---

2 *N.J.R.E.* 504 states that communications between a lawyer and his client in the course of that relationship and in professional confidence are privileged and a client has a privilege to refuse to disclose any such communication. The privilege may be claimed by the client or if deceased by his personal representative. *Id.* The disclosure of documents written by the now deceased Edwin Dolan, Jr. to his attorney is privileged and the privilege may only be waived by Mr. Zanoni, the Executor of his estate.

of Martha, virtually everyone that Nick mentioned in his Will will be either deleted via death or short changed if a survivor." The letters and notes of Edwin show his concern for providing for Decedent's heirs and Edwin's questions regarding asset distribution. However, the documents are not proof of the Decedent's intent or what the Decedent was contemplating at the time the Will was executed.

The cases that refer to *N.J.S.A.* 3B:3–33 and the testator's probable intent require more specific proofs than those provided here. In *In re Hays' Estate,* 128 *N.J.Super.* 460, 465, 320 *A.*2d 234 (Prob.Div.1974) the court found that circumstances surrounding the time the will was executed and up until the death of the testator are admissible. Further, in *Engle, supra,* 74 *N.J.* at 293, 377 *A.*2d 892, the Court stated that direct statements of the testator are admissible to show probable intent. In *Wilson, supra,* the court held that the testator's memoranda and scrivener's testimony regarding the testator's statements to him were admissible. 58 *N.J.* at 263, 277 *A.*2d 199. Similarly, the court in *Danelczyk v. Tynek,* 260 *N.J.Super.* 426, 431, 616 *A.*2d 1311 (App.Div.1992), held that the testimony of the scrivener and notes of his secretary were admissible as proof of probable intent.

As recently as 2006, the Supreme Court relied on the doctrine of probable intent when deciding *In re the Estate of Payne,* 186 *N.J.* 324, 895 *A.*2d 428 (2006). The Court had to determine whether the testator intended to bequeath his New Jersey property to his partner debt-free. *Id.* at 327, 895 *A.*2d 428. In reviewing the evidence to determine the testator's probable intent the court concentrated on a letter the testator sent to his attorney a few months prior to his death regarding the wording of his will. *Id.* at 330–31, 895 *A.*2d 428. The court found that the letter was "a clear and unambiguous expression of [the testator's] intentions that his beneficiaries ... receive their respective real estate debt-free and that neither beneficiary be required to sell the property to pay off the mortgages." *Id.* at 337, 895 *A.*2d 428. Finding that the letter was direct evidence of the testator's probable intent to give the

New Jersey property to Burton free and clear of mortgage debts, the matter was reversed and remanded to the trial court for further proceedings. *Id.* at 338, 895 *A.*2d 428.

 In this case, there has been no substantial extrinsic evidence of the Decedent's probable intent. The documents presented to the court are not helpful in determining the probable intent of the Decedent. The successor executrices have not provided any testimony regarding direct statements made by the Decedent at the time he executed the Will. There has been no testimony of the scrivener of the Will nor have the scrivener's notes related to the execution of the Will been presented to the court. There has been no evidence of any discussions that the family members had with the Decedent during the sixteen years that passed after he executed the Will until his death in 1990 concerning his wishes. The burden of proving Decedent's probable intent has not been shown by a preponderance of the evidence standard. All that is tendered to the court are inconclusive beliefs by two beneficiaries and argument based on privileged notes of Edwin to his attorney in his attempt to settle the Decedent's estate.

The court upon reviewing all papers submitted by the parties, the applicable statutes, case law and supplemental sources has determined that while the Will did not provide a gift-over of Edwin's share of the residuary, his bequest vested at the time of the Decedent's death. While there is an argument that there is an ambiguity in the Will regarding Edwin predeceasing Martha, the interpretation proffered by the successor executrices as being in accordance with the Decedent's probable intent has not been sustained by a preponderance of the evidence from proofs submitted by counsel from the executrices. Thus, the bequest should be distributed to Edwin's estate on an annual basis per the terms of the Will. Further Edwin's estate should receive an informal accounting from the successor executrices and trustees within sixty days.